# THE STANDARD BREWERY

*v.*

## THE BEMIS & CURTIS MALTING COMPANY.

*Opinion filed February 14, 1898.*

1. BAILMENTS—*in bailments for mutual benefit bailee is not an insurer.* In bailments for mutual benefit the bailee is bound to use but ordinary care, and if the thing bailed is lost or destroyed without his fault the loss must fall on the owner.

2. SAME—*illustration of bailment for mutual benefit.* A malting company which contracts to receive barley from a brewing company and malt the same for a certain price per bushel, delivered at the brewery, is a bailee for hire, and not an insurer of the barley while in its possession.

3. SAME—*fact that bailee agrees "to deliver" the article does not make him an insurer.* An agreement between a brewing company and a malting company, whereby the latter agrees to receive barley at any railroad in the city, haul it to its malting works, malt it and "deliver it" at the brewery, does not bind the malting company to assume all risks of inevitable accident to or destruction of the property while in its care.

4. APPEALS AND ERRORS—*party trying case on one theory cannot substitute another on appeal.* One suing a bailee for damages for the destruction of the article bailed, who tries the case and frames his

instructions on the theory that under the contract the bailee was liable only for negligence, cannot, on appeal, question the soundness of his own construction of the contract, by attempting to hold the bailee liable as insurer.

*Standard Brewery* v. *Hales & Curtis Co.* 70 Ill. App. 363, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

CUTTING, CASTLE & WILLIAMS, for appellant.

W. A. FOSTER, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The parties to this suit, on or about September 9, 1893, entered into the following written agreement:

"CHICAGO, *September 9, 1893.*

"This agreement, made this day by and between the Standard Brewing Company and the Bemis & Curtis Malting Company, both corporations of Illinois and city of Chicago, wherein it is agreed on the part of the said Standard Brewing Company to furnish, during the coming malting season, to the said Bemis & Curtis Malting Company, 50,000 bushels of barley to be malted, and to pay to the said Bemis & Curtis Malting Company the sum of fifteen cents per bushel for malting the said barley. The Bemis & Curtis Malting Company, on their part, agree to receive the said barley from any railroad in Chicago, haul the barley or pay the switching charges to their plant, store and malt said barley in the best manner possible, deliver the malt to said Standard Brewing Company at their brewery, corner Twelfth and Campbell avenue, all for and in consideration of the sum of fifteen cents per bushel, as above stated. The said Standard Brewing Company may increase the amount to 60,000 bushels, at their option."

Pursuant to this agreement the Standard Brewing Company delivered to the said malting company 27,847 bushels of barley, 9000 bushels of which were delivered in October, 14,000 bushels in November, and about 4000

bushels in December, 1893. The malting was begun on the 24th day of October. The process required from five to ten days. The places of business of the parties were about two and a half miles apart. An ordinary wagon load of malt is from 220 to 240 bushels. None of the barley or malt was re-delivered to the brewery, but on the 12th day of January, 1894, the warehouses of appellee in which it was stored were burned and the malt was destroyed or badly damaged. To recover for that loss appellant brought this action on the case, and appellee pleaded the general issue. A trial resulted in a verdict and judgment for the defendant, and on appeal to the Appellate Court for the First District that judgment was affirmed.

On the trial of the case in the circuit court both parties proceeded upon the theory that by the terms of the contract between them the defendant was the bailee of the plaintiff of the barley for hire, and that the extent of its liability was the exercise of ordinary care and diligence in malting and returning it to the plaintiff. Thus the jury were instructed, on behalf of plaintiff, that if they believed, from the evidence, that plaintiff delivered to the defendant barley in quantities reasonably suitable for malting, it was the duty of the defendant to malt and return it to the plaintiff within a reasonable time thereafter, and if the jury found, from the evidence, that prior to January 12, 1894, the defendant in fact had retained such quantities of barley for an unreasonable time after it had finished malting it, and so continued to retain the same until it was destroyed, then it is liable to the plaintiff for the value of the barley so detained by it, "and the jury should find the verdict for the plaintiff for the value of such barley, unless the jury believe, from the evidence, that the delay, if any, in returning the barley to the plaintiff after it was malted was caused by the plaintiff." Other instructions were given the jury, at the instance of the plaintiff, to the same effect. On that theory of the

case plaintiff insisted that by the exercise of due diligence the defendant could have malted and returned the barley to it before the destruction by fire, and that the loss was therefore occasioned by negligence, for which the defendant was liable.  The defendant, on the contrary, insisted that in view of all the facts of the case the delay in returning the malt to the plaintiff was not unreasonable, and also that it was not sooner returned by reason of a request of the plaintiff not to deliver it until notified, its elevator being at the time undergoing repairs.  The plaintiff denied any such request, and hence there was a conflict in the evidence both as to the question of ordinary care and whether or not the delay was occasioned by the plaintiff itself.

Upon the theory of the case as tried it is not claimed that the trial court erred in its rulings upon instructions to the jury.  Whether or not the defendant was guilty of such negligence as to render it liable was a controverted question of fact, which has been settled in favor of appellee, and is not now subject to review.  It is, however, assigned for error that the trial court erred in the admission and exclusion of evidence.  The defendant proved by several witnesses that one Kieffer, employed by the plaintiff to look after and superintend the acceptance and delivery of the malt, told defendant not to deliver the malted barley until notified by him, as they were making some repairs on the elevator.  Kieffer denied that he made any such request, and in his direct and cross-examination, as well as that of witnesses introduced by the defendant on this issue, numerous objections were interposed by counsel for the plaintiff, which were overruled by the court, and it is now insisted that in those rulings reversible error was committed.  No good purpose would be served by discussing the several points thus made.  We have considered them all with such care as they seem to be entitled to, and are satisfied that no substantial error was committed, either in the exclusion of

proper testimony or the admission of that which was improper.

The principal ground of reversal urged is, that the defendant's liability to return the malted barley to the plaintiff was, by the terms of its agreement, absolute, and that no degree of care and diligence on its part could be set up as a defense to the action. Authorities need not be cited in support of the proposition that, having itself asked the court to instruct the jury as above shown, appellant cannot now be heard to question the soundness of those instructions or the propriety of giving them to the jury. But if appellant could be relieved from this dilemma, we entertain no doubt that the correct rule of law applicable to the case was announced by the trial court. A bailment for hire exists where the bailee is hired by the bailor to bestow labor or perform service upon the thing bailed. In such case the bailment is one of mutual benefit, and only ordinary care on the part of the bailee is required. If the article perish in his hands without his fault the owner must lose the property. Story on Bailments, sec. 437; Edwards on Bailments, sec. 425; 2 Parsons on Contracts, 130; *Russell* v. *Koehler*, 66 Ill. 459.

The contention that the case is not within this general rule because of the agreement on the part of the bailee to return the grain to the bailor cannot be sustained. The attempt is to invoke the rule quoted in *Steele* v. *Buck*, 61 Ill. 343, from *Paradine* v. *Jaine*, Aleyn, 27, as follows (p. 346): "Where a party by his own contract creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his own contract." And as stated by Schouler in his work on Bailments (sec. 106): "Whatever lawful terms may have been introduced by their contract for the purpose of qualifying the method of risk of performance should be given full force, whether expressly set forth or only implied." The position here is, that the language of the

contract, "the Bemis & Curtis Malting Company, on their part, agree to receive the said barley from any railroad in Chicago, haul the barley or pay the switching charges to their plant, store and malt said barley in the best manner possible, *deliver the malt to said Standard Brewing Company at their Brewery*, corner Twelfth and Campbell avenue, all for and in consideration of the sum of fifteen cents per bushel, as above stated," makes a special contract on the part of the bailee to enlarge its liability and become an insurer for the return of the property. In our view of this contract it bears no such construction. It simply shows an agreement between the parties as to the manner in which the barley was to be handled and at whose expense the transfer to and from the malting house should be made. It is unreasonable to suppose that by the use of the words "deliver the malt to said Standard Brewing Company," it was the intention of the parties that the bailee was to assume all the risks of inevitable accident or destruction of the property. When language is used which does no more than express in words the same obligation which the law raises from the facts of the transaction itself, the party using the language is no further bound than he would have been without it. *Young* v. *Leary*, 135 N. Y. 569.

The case of *Steele* v. *Buck, supra,* relied upon by appellant as sustaining its position, has no proper application to this case. There, by a charter-party or lease a vessel was let, with the usual covenants to return in as good order as it then was, reasonable use and wear excepted. A bond was given by the lessees, with the appellant as surety, to secure the performance of the covenants of the lease, the bond being of the same date. The lease "contained an express covenant that the lessees would deliver the vessel at the port of Chicago, at the close of the navigation season for that year, in as good and sound condition as she then was, reasonable use and wear excepted." The vessel was destroyed upon the lake, and the action

was on the bond, the breach assigned being the failure to return her according to the contract. It was there said, speaking of the contract (p. 348): "It is absolute in its terms. It is a positive undertaking by Vogell & Crandall to restore the propeller at the end of the season for which it was hired, notwithstanding it might be destroyed by the perils of the sea. The charter-party itself provides for the return of the propeller, and *if this were all* the contract between the parties there might be some reason for insisting that it creates no higher obligation than the law imposes." Certainly the contract here under consideration bears no such construction as that placed on the bond there sued on. The obligation of the bailee to re-deliver the malted grain to the bailor arose by implication of law, and without any express agreement whatever the bailee would have been under the same obligation to make such delivery that it is under the contract, except, perhaps, as to the place of delivery. To sustain the position here contended for would be to completely abrogate the well recognized rules of law governing the rights and duties of bailees for hire.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*