## Ford Motor Company v. Morris R. Osburn.

### Gen. No. 13,812.

1. BAILMENTS—*who bailee for hire.* Upon receiving an automobile for repairs, to be made for the mutual benefit of the owner and the repairer, the repairer becomes a bailee for hire, responsible only for a failure to exercise ordinary care.

2. BAILMENTS—*when bailee not responsible for loss resulting from fire.* In the absence of a showing of a failure to exercise ordinary care, a bailee for hire is not liable for the destruction by fire of the thing bailed.

3. WARRANTY—*what not breach of.* A particular warranty of an automobile set forth in the opinion is construed and held not breached.

4. WARRANTY—*when implied, does not arise.* An implied warranty of an automobile does not result from a purchase made upon sight.

5. CONTRACTS—*how cannot be varied.* A contract reduced to writing is conclusively presumed to express the entire contract of the parties and all prior and contemporaneous negotiations in respect to the subject-matter of the contract are deemed to have been merged therein and cannot be shown to affect the terms of such contract.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed April 20, 1908.

**Statement by the Court.** Morris R. Osburn, plaintiff below, filed the following amended bill of particulars:

"Money had and received by defendant for use of plaintiff, money paid by plaintiff to defendant as the purchase price of a certain automobile agreed to be sold by defendant to plaintiff and warranted by defendant to be sound and suitable for the purpose for which it was sold; but said automobile not being sound or suitable for the purpose, etc., a breach of said warranty occurred and said automobile returned but purchase price withheld by defendant, $680. Also for a certain automobile and attachments left by plaintiff with defendant and destroyed or lost through his fault, $780; in all $780."

The cause was tried by the court, without a jury. The court found for the plaintiff and assessed his damages at $680, and overruled a motion by defendant for a new trial, and rendered judgment on the finding.

The following contract was entered into between the parties:

"CHICAGO, 10/26, 1906,

FORD MOTOR COMPANY;

SIRS: You are authorized to enter my order for One Model N Ford Automobile, upon the following terms and conditions:

1. The price to be six hundred and thirty dollars ($630). I agree to pay thirty dollars ($30) upon your acceptance in writing of this order, and the balance of Six Hundred Dollars ($600) within forty-eight hours after I have been notified by you that the above automobile is ready for delivery. The same to be delivered F. O. B. Chicago.

2. I agree to accept automobile from you immediately upon notice that it is ready for delivery. Upon my failure to do so within the forty-eight hours, you may dispose of it to another customer or in any way you desire, and you are not to be held liable for failure to deliver to me. The above mentioned first payment to be forfeited by me at your option.

3.  It is agreed that this automobile will be finished and equipped as per regular catalogue specifications, and any and everything else furnished beyond said specifications shall be extras, to be paid for by me at schedule prices as shown on this agreement in paragraph marked 'Extras.'

4.  This order is given by me subject to your acceptance, and, when approved by the authorized head of the Branch of the Ford Motor Company from where ordered, it shall constitute a valid contract and shall be binding between us.

5.  It is further agreed that this automobile is purchased by me exclusively subject to the terms and provisions of the warranty hereinafter set forth, which is hereby made a part of the contract between us, and that it is the only guarantee and warranty, either expressed or implied, made under this contract.

We warrant all goods furnished by us for sixty days following the date of their shipment, based upon the date of invoice covering the goods, this warranty being limited to the replacement in our factory of all parts giving out under normal service in consequence of defect of material or of workmanship.

If the circumstances do not permit that the work shall be executed in our factory, this warranty is limited to the shipment, without charge, of the parts intended to replace those acknowledged to be defective.

It is, however, understood that we make no warranty whatever regarding pneumatic tires or the batteries.

We cannot accept any responsibility in connection with any of our motor cars when they have been altered or repaired outside of our factory.

We are not responsible to the purchaser of our goods for any undertakings and warranties made by our agents beyond those expressed above.

It is expressly agreed and understood by the undersigned that the Ford Motor Company makes no warranty of its goods whatsoever, either expressed or implied, other than as stated herein, and that the said Ford Motor Company desires and expects that its

customers shall make a thorough examination and inspection of its goods before purchasing same.

6. Extras.    1 Top
Extra 3 inch tires
3 Oil Lamps & horn
Freight
} included in above price.

7. The above is a full agreement of every kind and nature pertaining to this sale, and no agreement will be recognized other than embodied herein, and no erasures or additions will be recognized unless approved of in writing hereon by an Officer of the Company.

M. R. Osburn,<br>Address Janesville.

Approved for Ford Motor Co.

Thos. J. Hay, Mgr."

Thomas J. Hay, who was, at the date of the contract, the manager of the Chicago branch of the Ford Motor Company, testified that, in his best judgment, he signed the approval of the contract the day the sale was made; also that the contract put in evidence by the defendant and exhibited to the witness was the copy which the defendant kept, and that, at the time of the sale, the plaintiff paid $30 and the remainder of the price within a few days. It does not appear from the evidence exactly when the automobile was shipped from Chicago to Janesville, Wisconsin, where the plaintiff lives; but it appears from a letter from plaintiff to defendant, of date October 31, 1906, that plaintiff had received the machine prior to that date. In that letter he wrote: "There are one or two points on which I wish you would assist me," etc., and then mentions the pump rattling considerably, the car running too fast when he makes certain adjustments, too much vapor escaping, and one of the glass pumps, through which oil goes from the tank, filling up. A number of other letters passed between the parties, the plaintiff mentioned difficulties which he had with the machine, and the defendant making suggestions with regard to it; and in the early part

of January, 1907, the defendant sent to Janesville a man named Rubble, one of its salesmen, to examine the machine, and ascertain, if possible, what the difficulty was. He examined the machine, worked on it, and undertook to overcome the difficulty of operating it, but failed. The evidence tends to prove that the machine when received by the plaintiff, and subsequently thereto, did not operate properly, and we do not understand this to be denied by the defendant; but the evidence also tends to prove that there was nothing radically wrong with it, or which could not easily and readily be remedied by a skilled mechanic in automobile machinery. Finally, January 12, 1906, Mr. Osburn agreed with Mr. Hay, manager of the Chicago branch of the Ford Motor Company, that he would send the car back to Chicago for examination, etc. The plaintiff testified: "It was understood between Mr. Hay and myself, at the conversation which I had with him on January 12th, already referred to, that I was to ship the car back to see if he could make it right." It appears from a letter, of date January 15, 1907, from plaintiff to defendant, that plaintiff shipped the car to Chicago January 14, 1907, in which letter he wrote: "I had marked on the freight receipt 'Returned for repairs'." January 22, 1907, defendant wrote to plaintiff, "Your car was duly received, and our boys have gone over it and pronounced it in first-class condition. We should like very much, however, to have you visit Chicago and allow us to take you out in the car and show you what it will do, while it is here. We feel confident that the car will be highly satisfactory to you in its present condition. Trusting that you can arrange to follow out our suggestions, we are," etc. In answer to this letter defendant received a letter from one A. C. Jenkins, informing it that the plaintiff was and had been for a week confined to his home by illness, but that when he returned to his office defendant's correspondence would be attended to. The plaintiff did not visit Chi-

cago to see the car after it was repaired by the defendant, and the car was destroyed by fire in the defendant's building February 4, 1907, between 12 and 1 o'clock A. M.

JOHN P. WILSON, NATHAN G. MOORE and WILLIAM B. McILVAINE, for plaintiff in error; WILLIAM B. HALE, of counsel.

WARREN B. WILSON, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

The questions discussed by counsel for the parties, respectively, are whether the defendant, the Ford Motor Company, was a bailee for hire at the time of the fire; whether the retention of the automobile by defendant, from the time it received it till the time of the fire, was or not an unreasonable detention; whether defendant was liable for breach of warranty, and whether plaintiff had rescinded the contract.

The trial court, as is evident from remarks of the court, made just before finding for the plaintiff, was of the opinion that the defendant retained the automobile in its possession an unreasonable length of time, after putting it in what is considered good condition, and also that there was a breach of warranty by defendant.

Counsel for defendant contend that the defendant was, when it received the automobile, on its being shipped back to it, a bailee for hire and so continued till the time of the fire, and that it exercised ordinary care of it, and was not guilty of any negligence in premises. The plaintiff testified that he agreed with Mr. Hay, the manager of defendant's branch at Chicago, to ship the automobile back "to see if he could make it all right." When he shipped it, he marked on the freight receipt, "Returned for repairs." In plaintiff's letter to defendant of February 11, 1907,

written before he knew of the fire, and in response to defendant's letter of January 22, 1907, he wrote: "I am not in a condition physically, just at present, to go to Chicago, but I will try and get there, if possible, within the next day or so." Defendant's letter of January 22, 1907, had informed plaintiff that the automobile had been put in first-class condition, and had expressed a wish that plaintiff would come to Chicago and see for himself. The automobile having been shipped by plaintiff, as the owner thereof, for repairs, and the repairs being for the mutual benefit of the parties, the defendant, when it received the automobile, became bailee of it for hire, and was responsible for only ordinary care. Russell v. Koehler, 66 Ill. 459; Keith v. Bliss, 10 Ill. App. 424; Union Stock Yards & Transit Co. v. Mallory, 157 Ill. 554; Standard Brewery v. Bemis & Curtis Malting Co., 171 Ill. 602; Lincoln v. Gay, 164 Mass. 537, 540.

The exact time when the defendant received the automobile, when plaintiff returned it for repairs, does not appear from the evidence, but it appears from the plaintiff's letter of January 15, 1907, that he shipped it January 14th, and counsel for defendant admit, in their argument, that defendant received it January 16th. Mr. Hay testified that work on the automobile was completed within forty-eight hours after its receipt by the defendant, and Mr. Hedges, an automobile engineer, who had charge of the mechanical work of defendant's Chicago branch, testified that "the repairs were accomplished within a day after they were started." If the repairs were made on the seventeenth of January, which was the day next after defendant received the automobile, then the retention thereof was from January 17th till February 4th, the day of the fire, which would be over two weeks. Plaintiff's counsel claims a detention of two weeks, which we think fair, in view of the evidence. Defendant's counsel claim the detention was not unreasonable, and that the automobile was at plaintiff's

risk at the time of the fire. Plaintiff's counsel contends the contrary.

Mr. Hay testified that in the conversation of January 12th, in which it was agreed that the automobile should be sent back to Chicago, he said to Mr. Osburn that he would like to have him come to Chicago and see the automobile while in Chicago, and that he, Mr. Hay, would take it out on the street and show it to him, and that the plaintiff agreed to this, and said that he was in Chicago frequently, and that would be an easy matter for him; that the conversation occurred at the Southern Hotel in Chicago. Mr. Osburn testified in respect to the conversation, that Mr. Hay suggested that he, Osburn, should try the automobile in Chicago, and he told Mr. Hay that the automobile might run on the Chicago boulevards and not up there; meaning, we suppose, at Janesville. Plaintiff was then asked and answered as follows:

"Q. Did you say you would come down here and try it before they sent it back? A. No, I did not.

Q. Did you say you would not? A. Why, I objected to that kind of an arrangement in all the transactions, in fact all the way back to the store."

The presiding judge of the trial court remarked that he did not think plaintiff agreed to come to Chicago. While it may be true that plaintiff did not expressly promise to come to Chicago to witness a test of the automobile, when repaired or readjusted, we are of opinion that he induced the defendant to believe and expect that he would so do.

The defendant's letter of January 22nd was evidently received by the plaintiff, and the answer to it of January 25th, written by his direction, and that answer does not request the shipping the automobile to plaintiff, but merely states a reason why plaintiff could not come to Chicago, viz: his confinement at home by illness, and states that the matter will be attended to when plaintiff would come to his office, thus deferring the matter till plaintiff's recovery from his

illness. February 11, 1907, the plaintiff, not then knowing of the fire of February 4th, wrote: "Your letter of January 22nd was referred to me today, this being the first day that I have been at my office since my recent illness. I am not in a condition physically, just at present, to go to Chicago, but I will try and get there, if possible, within the next day or so." Can there be any doubt that, if plaintiff had not been ill when defendant's letter of January 22nd was received, he would either have visited Chicago to inspect the automobile, or would have written that he would come, as he did in his letter of February 11th? He was only prevented from coming to Chicago to witness a test of the automobile, in accordance with his letter of February 11th, by a letter from defendant, dated February 12th, informing him of the fire and that the automobile was practically a total loss.

After defendant had put the automobile in order, it was reasonably necessary, in view of the numerous complaints made by the plaintiff, to test it, and this required some time.

Mr. Hedges testified that when the car was returned from Janesville, the defendant made some small adjustments, the expense of which, if charged, would not have exceeded $7 or $8, and that subsequently it was tested by operating it, first by the mechanic who made the adjustments, and afterward by himself; that he operated it for twenty-five or thirty miles, and found that it was in good condition and acted properly.

Plaintiff's counsel relies on Standard Brewery v. Malting Co., 171 Ill. 602. In that case the agreement between the appellant and the appellee was, that the former would deliver to the latter, during the malting season, 50,000 bushels of barley to be malted, and the Malting Company agreed to receive the barley from any railroad in Chicago, haul it to its plant, malt it in the best manner possible, and deliver it to the Standard Brewery at its brewery in Chicago. The Standard Brewery delivered to the Malting Company 9,000

bushels of barley in October, 14,000 bushels in November, and 4,000 bushels in December. The Malting Company's warehouses, in which the barley was stored, were destroyed by fire January 12, 1894. The trial court instructed the jury that it was the Malting Company's duty to malt and return the barley to the plaintiff within a reasonable time after its delivery to that company, etc. The jury found for the plaintiff, the Standard Brewery, judgment was rendered on the verdict, and the court affirmed the judgment.

We do not think the case is applicable, the facts in that case and in this being essentially different. The Standard Brewery was, as its name imports, engaged in the brewing business, and doubtless required prompt delivery of the barley when malted, and the Malting Company's contract was to malt the barley and deliver it to the Standard Brewery when malted. Each case must rest on its own circumstances.

We are of opinion that the automobile was not unreasonably detained by the defendant, and that the defendant was a bailee of it at the time of the fire, and that it was in its possession at plaintiff's risk. Proof of the destruction of the automobile by fire having been made, it was incumbent on the plaintiff to prove want of ordinary care, or negligence, on the part of the defendant. Standard Brewery v. Hales & Curtis Malting Co., 70 Ill. App. 363, 367, and authorities cited; Hunter v. Ricke Bros., 127 Ia. 108.

The plaintiff did not attempt to prove, nor does his counsel claim, that the fire occurred by reason of the defendant's negligence. The cause or origin of the fire could not be ascertained on investigation, and is not known, and evidence introduced by the defendant, which is undisputed, shows that the defendant used great precautions to guard against fire.

Plaintiff's counsel claims that the automobile was warranted to be fit for the use intended, and that there was a breach of that warranty. The only clause in the contract relating to warranty is this: "We warrant

Ford Motor Co. v. Osburn.

all goods furnished by us for sixty days following the date of shipment, based upon the date of invoice covering the goods; this warranty being limited to the replacement, in our factory, of all parts giving out under normal service, in consequence of defect of material or of workmanship." Manifestly, this warranty is limited to the replacement of parts which give out under normal service, by reason of defect of material or workmanship. Plaintiff's counsel does not claim that the foregoing warranty is a warranty that the automobile would answer the purpose for which it was intended, but contends that there was an oral agreement which implied such warranty. Counsel say: "In this case, if the sale is to be considered verbal, there was also an express warranty that the car was all right." Reference is here made to the following testimony of the plaintiff: The plaintiff, after testifying that he had a conversation with a salesman of defendant, in regard to purchasing the automobile in question, further testified: "The salesman said, 'I think I will let you have this car.' He went back and came back and said, 'You can have this car.' I asked him, 'How much?' and he said it would be $630. I said, 'The car is all right, is it?' He said, 'Yes.' I said, 'I will take it,' and I gave him $30 to bind the bargain." This evidence went in over defendant's objection. "It is fundamental that, when a contract is reduced to writing, it is conclusively presumed that the written instrument expresses the entire contract between the parties, and that all prior and contemporaneous negotiations, in respect to the subject-matter of the contract, are excluded. DeWitt v. Berry, 134 U. S. 307, 315; Seitz v. Brewers' Refrigerating M. Co., 141 U. S. 510; Ramming v. Caldwell, 43 Ill. App. 175, and cases cited.

It may be added that the plaintiff purchased the automobile in question on sight, and as a "Model N Ford Automobile," and after inspecting it, and that he received the very automobile which he purchased. In such case there is no implied warranty. Seitz v.

Brewers' Refrigerating M. Co., *supra;* Peoria Grape Sugar Co. v. Turner, 175 Ill. 631.

The contention of plaintiff's counsel that plaintiff rescinded the contract is not supported by the evidence.

The judgment will be reversed.

*Reversed.*