## Daniel Ryan, Appellant, v. Associates Investment Company of Illinois, Appellee.

### Gen. No. 40,035.

Heard in the second division of this court for the first district at the April term, 1938. Opinion filed December 13, 1938.

RYAN, CONDON & LIVINGSTON, FISHMAN & FISHMAN and LESTER E. WILLIAMS, all of Chicago, for appellant; JOHN M. TUOHY, of Chicago, of counsel.

ECKERT & PETERSON, of Chicago, for appellee; A. R. PETERSON and TOM LEEMING, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Daniel Ryan, plaintiff, brought an action for personal injuries against Associates Investment Company of Illinois, a corporation, and Harold L. Secor, Ellis Secor and Arthur Secor, copartners, doing business as

Fort Dearborn Garage, defendants. At the close of plaintiff's case, Ellis Secor and Arthur Secor were dismissed as defendants, on plaintiff's motion. The jury returned a verdict against Harold L. Secor and Associates Investment Company, the remaining defendants, in the sum of $12,000. An oral motion for a new trial, made on behalf of defendant Harold L. Secor was overruled. No notice of appeal was filed by him, nor has his appearance been filed on appeal. A written motion for a judgment notwithstanding the verdict and in the alternative for a new trial was made on behalf of Associates Investment Company. The motion for judgment notwithstanding the verdict was granted and a judgment was accordingly entered in favor of that defendant, from which plaintiff appeals.

During the pendency of the appeal counsel for Associates Investment Company moved for a rule upon plaintiff to disclose whether or not any, and if so what sums of money have been paid to him by or on behalf of Harold L. Secor on account of the judgment, and in response to that rule counsel for Secor acknowledged that subsequent to the trial there was paid to plaintiff, on behalf of Secor, by the United States Mutual Insurance Company the sum of $5,000, and by way of countersuggestion plaintiff agrees that if this court should reverse the judgment notwithstanding the verdict and enter judgment here for plaintiff, that a credit of $5,000 be allowed on account of the verdict returned by the jury for $12,000.

It appears from the evidence that about 1 o'clock p. m., December 24, 1935, while standing on a safety island located adjacent to the northbound street car tracks on the southeast corner of Ashland avenue at its intersection with 17th street, Chicago, plaintiff was struck and injured by a tow truck owned and driven by Harold L. Secor, who was in the act of towing a damaged car to a garage where some of the repossessed

cars, owned by defendant, Associates Investment Company, were temporarily stored. There is evidence tending to show that the tow truck was being driven at an excessive rate of speed and that it ran up and upon the safety island where plaintiff was standing. No proof was offered by defendant, Associates Investment Company, to rebut the evidence offered on the question of Secor's negligence.

The principal question presented for determination is whether Secor was acting as agent for defendant, Associates Investment Company, and within the scope of his authority at the time and place of the accident, or whether he was an independent contractor, and collateral to this proposition there arises the further question whether the issue as to agency or independent contractorship was to be determined by the court or jury.

As applicable to these questions, the following salient facts appear of record: Associates Investment Company were in the business of purchasing automobile paper and also sold for cash, to used car dealers, automobiles that had been repossessed by the company from conditional owners for failure to make instalment payments in accordance with their conditional sales contracts. The cars repossessed were picked up at various places in Chicago and surrounding territory. They were first located on the streets or in various garages around Chicago and vicinity by employees of the company, known as "collectors" or "spotters."

Harold L. Secor and his brothers, under the name of "Fort Dearborn Garage," were engaged in operating a six-car garage and owned two trucks, used for towing cars.

They had a repairman's license, but no license to store cars, and no automobiles were stored in their garage. For several years prior to the accident they had done considerable towing for Associates Invest-

ment Company. When a car was about to be repossessed, Associates Investment Company would notify defendant Secor where the car was located and instruct him to pick it up and bring it to such garage or storage plant as it might direct. Many of the cars, by reason of their defective condition, were towed by Secor during this period and were brought to the Old Fort Garage at 235 East Grand avenue, a considerable portion of which was given over to the storage of cars for Associates Investment Company. Frequently, when cars were picked up by defendant Secor from outlying garages there was a storage charge which he advanced and subsequently collected from Associates Investment Company, together with a $2 charge for his services for towing. Payments were made by check of the Associates Investment Company, drawn on the First Bank & Trust Company of South Bend, Indiana.

On the day of the accident Secor was directed by one Rosenbach, an employee of Associates Investment Company, whose duty it was to locate cars that were to be repossessed, to go to the Englewood Service Garage, at 5953 South Halsted street, pick up a car, pay the storage and deliver it to the Old Fort Garage. In accordance with these instructions Secor proceeded to the Englewood Service Garage with his tow truck, ascertained by engaging the motor that the bearings were burned out so that it could not be run under its own power, raised the front wheels from the ground and fastened it with a chain to his tow truck, paid the storage, amounting to $3, and proceeded to deliver the car in accordance with instructions, to the Old Fort Garage. While en route the accident occurred, resulting in injuries to plaintiff.

Secor was from time to time called out on jobs by various persons designated as collectors, who worked for defendant and towed cars from wherever they were located. He towed an average of three cars or more

a week for Associates Investment Company from all over the city and territory as far as 30 miles from Chicago, and received for the long runs whatever sums were agreed upon in the telephone conversations with the various collectors. Sometimes he towed cars when they were standing out in the street, and on those occasions some representative of Associates Investment Company would wait for him at the place where the car was to be picked up, deliver the keys and give him instructions as to where the car was to be delivered. Occasionally Secor was required to repair tires on towed cars, and charges for these services were added to the towing bill and paid. Fort Dearborn Garage towed cars for private individuals other than Associates Investment Company and also did general repair work on automobiles in its place of business. When they towed cars, they used their own truck and paid for their own gasoline and oil. They had business cards during 1934 and 1935, which were handed out to the public, advertising their own business.

Charles C. Schroeder, who was called as a witness on behalf of plaintiff, testified that he had been employed by Associates Investment Company until December 15, 1936. He described the nature of this defendant's business and named several of the collectors who were engaged to spot cars for the purpose of repossessing them. He described the business transactions of defendant with Secor of the Fort Dearborn Garage, as follows:

"They towed repossessed automobiles for us and brought them in the garage. I have called him, myself. It is hard to say how many times; maybe a dozen, maybe two dozen. Sometimes once a week and sometimes three times a week.

"When I called it was for the purpose of having some car towed in. Men from our office would be outside sometimes when they would call in, and they had

authority to call the Fort Dearborn Garage and Mr. Secor to tow cars for the Associates . . . When I myself called Mr. Secor or the Fort Dearborn Garage I would tell him where to go. I never told him whether to take a tow truck or not; merely where to go. I described the automobile and asked him to pick it up and deliver it to our garage.

"Sometimes storage was demanded on a car, and in those instances Mr. Secor told us what the amount was and when he was through he would stop in at the office and pick up the amount necessary to pay the garage and take it over and obtain a receipt. There were instances where a car was damaged and had to be towed in. As a general rule, we never said anything about it. The only thing, if a car was badly damaged and completely wrecked, we would then tell him the condition of the car and let them use their own judgment what type of car to use to bring it back. . . . As a general rule he was ordinarily told to act on his own good judgment as to how he did. . . . I don't recall any instance where he called where anything was wrong."

It is conceded that whether, in a given situation, the relationship of one person to another is that of agent or independent contractor generally depends upon various circumstances, and while many of the reported decisions upon the subject stress one or more factors bearing upon the character of the relationship, it appears that the particular factor emphasized by the court in a given case often assumes importance because other circumstances, which may be important, are not present or decisive. The best analysis of the subject to which we have been referred is that which is contained in Restatement of the Law of Agency, sec. 220, p. 483. The American Law Institute's Committee on Agency had among its members numerous outstanding teachers and writers on the subject, including Prof.

Floyd R. Mechem. This text states that "in determining whether one, acting for another, is a servant or an independent contractor, the following matters of fact, among others, are considered: (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; and (i) whether or not the parties believe they are creating the relationship of master and servant." In commenting upon this classification of determining factors, the authors on page 484 say that the relationship of master and servant is one not capable of exact definition, and cannot be defined in general terms with substantial accuracy, and they say that where the inference is clear that there is, or is not, a master and servant relationship, it is made by the court; otherwise, the jury determines the question after instructions by the court as to the matters of fact to be considered. Under subsec. (c) on page 485, the authors say that the important distinction between the relationship of agent and independent contractor "is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants. . . . An agent who is not subject to control as to the manner

in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results. For the purpose of determining liability, they are both 'independent contractors' and do not cause the person for whom the enterprise is undertaken to be responsible. . . .''

Counsel for Associates Investment Company have in their brief taken the various factors listed in the Restatement of the Law of Agency, as determining whether one acting for another is a servant or an independent contractor, and have pointed out the numerous facts present in this proceeding that have an important bearing in determining the relationship of the parties. Among the more important circumstances stressed by counsel are the extent of control which the master may exercise over the *details* of the work, whether or not the one employed is engaged in a distinct occupation or business, the character of the occupation and the particular skill required therein, whether the employer or workman supplies the instrumentalities or tools for the person doing the work, the method of payment and whether or not the work is a part of the regular business of the employer. The evidence in the case at bar indicates that defendant exercised no particular control over the details of the work done by the Fort Dearborn Garage or Secor. They were merely ordered to take repossessed cars to a particular garage for storage, and the manner of conveyance, the route over which Secor was to proceed and the details of the work were evidently left entirely to Secor. The undisputed evidence further discloses that the Secors were doing business as a partnership, under the name of Fort Dearborn Garage, that they towed cars for private individuals other than Associates Investment Company and did general repair work on automobiles. Defendant was billed for jobs on the regular billhead of Fort Dearborn Garage, and checks in payment of services

were made payable to the latter, which had a business of their own which was advertised as such to the general public by means of the distribution of cards. Secors were specialists in this kind of occupation, and when cars were not in condition to be driven, Secor was required to and did exercise his skill and judgment in determining how a particular car was to be transported to its destination. In rendering this service Secor used the towing trucks of the Fort Dearborn Garage, and supplied his own gasoline and oil. Compensation for these services was at the rate of $2 per car in the City of Chicago, and where a repossessed car was to be brought from a territory outside the city, the spotter or collector who called Secor and gave him instructions agreed on a price over the telephone at the time directions were given. Upon the question whether or not the work is a part of the regular business of the employer, it may be said that Associates Investment Company was primarily engaged in the purchase of automobile paper, and that it sought to protect itself from loss by repossessing cars when a purchaser had defaulted on his contract. This, however, did not put it in the business of repossessing automobiles; that function was only incidental to its main business.

Mechem in his work on Agency says (2nd ed., vol. 2, sec. 1917, p. 1492):

"If, . . . the master, using due care in the selection of the person, enters into a contract with a person exercising an independent employment, by virtue of which the latter undertakes to accomplish a given result, being at liberty to select and employ his own means and methods, and the master retains no right or power to control or direct the manner in which the work shall be done, *such a contract does not create the relation of master and servant, and the person contracting for the work is not liable for the negligence*

*of the contractor, or of his servants or agents, in the performance of the work."* (Italics ours.)

As illustrative of subsec. (c) of the Restatement of the Law of Agency (sec. 220, p. 483), namely, "the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by specialists without supervision," defendant cites the case of *Woods v. Bowman,* 200 Ill. App. 612, and upon oral argument stressed the conclusions reached in that decision. There the defendant, who lived on a farm, had possession of five automobiles which with other property he desired to offer for sale, and in order to make these cars salable he entered into an agreement with one Hardin, who operated a garage, to come out to the farm, get the cars, take them to the garage, repair them and then return them to the farm for sale. In the course of returning the cars Hardin injured plaintiff, who brought suit against defendant on the theory that Hardin was his servant or employee. In holding that the defendant was not liable under the facts presented, the court said (p. 615):

"When a garageman receives an automobile for repairs to be made for the mutual benefit of the owner and the repairer he becomes a bailee for hire. *Ford Motor Co. v. Osburn,* 140 Ill. App. 633. A servant is one who is employed to render personal services to his employer *otherwise than in the pursuit of an independent calling,* and who remains entirely under the control and direction of the latter. Appellant had no control over Hardin, nor did he give any directions as to what repairs should be made, nor how they should be done. *Hardin was engaged in the independent calling of running a garage and making repairs on automobiles.* He was not in any sense the employee of appellant. Appellant contracted with him to take the cars from the farm to the garage, repair them, return them to the

farm, and demonstrate them at the sale, *and it was while Hardin was fulfilling that part of the contract of returning the cars to the farm that the injury happened.* That a bailor is not liable to third persons for injuries received through the negligence of a bailee is well settled. *McColligan v. Pennsylvania R. Co.*, 214 Pa. 229.'' (Italics ours.) The court's decision is predicated principally upon the fact that Hardin was engaged in an independent calling, namely, that of running a garage and making repairs to automobiles, and the facts in the case at bar clearly disclose that Secor and the Fort Dearborn Garage were engaged in the same calling.

In his work on Agency (2 Mechem on Agency, 2nd ed., sec. 1871, p. 1456) Mechem states:

''The method of payment is not without significance, but is by no means the test. Ordinarily the independent contractor is paid by the job, that is, a fixed sum for accomplishing a certain result, but he may be paid in accordance with some unit of measurement, and the fact that he is paid by the day, week or month, is not of itself enough to destroy his standing as an independent contractor.'' The method of payment was also considered important in *Meece v. Holland Furnace Co.*, 269 Ill. App. 164, 168; *Foster v. Wadsworth-Howland Co.*, 168 Ill. 514, 519; *Bristol & Gale Co. v. Industrial Commission*, 292 Ill. 16, 22.

The skill required in the particular occupation, considered as a factor in determining the relationship of agency or that of independent contractor, was considered in the early case of *Arasmith v. Temple*, 11 Ill. App. 39, wherein the reasoning of the court and examples employed are best stated by a quotation from the opinion (pp. 50, 51):

''If, however, it were to plow a certain field for the next corn planting, to build a certain described fence, to dig and complete a well as specified, or the like, it

would present the case of a contract for a 'specific job,' where the employer might be interested only in the 'result' and quite indifferent to the method of its accomplishment.

"Here it might be difficult to form a satisfactory conclusion upon the point in question from this circumstance alone. *But the further fact that the job was such as to require for its accomplishment some special knowledge and skill, falling within 'a regular independent employment' or 'distinct calling' which the employe followed as a business, would raise some probability that it was intended to leave to his judgment, to be exercised on his own responsibility, the means, the manner of using them, and all the details of the work.* This probability would be increased by the additional fact that he was to be paid for it a 'gross sum'; and further, 'if he used his own tools and assistants'; *and still further, if the employer neither had nor pretended to have the special knowledge and skill required;* and might become a clear belief, if it also appeared that during the progress of the work he did not in fact, though present, give any directions in regard to them. These and other like circumstances appearing in different cases have come to be recognized as *indicia* of the character of a contractor, and have been gathered up by courts and text writers into definitions to distinguish it from that of a servant. No one perhaps is essential to it or conclusive of it, but they all tend to establish the one fact which is decisive, namely, that as to the act in question the employe was not subject to the control and direction of the employer. The series of cases above cited present all that have been mentioned and perhaps more, but not all that might appear, of which an example is suggested by the case at bar, where the compensation is contingent upon securing a result which is necessarily uncertain but largely depends upon *the care and skill of the*

*employe to be used upon a job in the line of his special business."* (Italics ours.)

Without an extended discussion of the many authorities cited by the respective parties, we are satisfied that the facts of this case must be construed as having created the relationship of independent contractor. Plaintiff cites several decisions in support of his contention that Secor was an agent of Associates Investment Company, but an analysis of these decisions indicates that the court emphasized one factor or another where other factors present in this proceeding did not appear. In *Thiel v. Material Service Corp.*, 364 Ill. 539, cited by plaintiff, the court was engaged solely in determining whose agent the proprietor of the vehicle was, and that presents a different situation. In *Decatur Ry. & Light Co. v. Industrial Board*, 276 Ill. 472, the issue was raised as to whether the injured party was an employee or an independent contractor, and the court held that under the evidence it might reasonably have found that he was an employee, but the facts underlying that decision are not in any way similar to those in the case at bar. In the last analysis each decision rests on the circumstances of that particular case, and it becomes the function of the court or jury, after applying the various controlling factors, to determine what the relationship was.

The collateral question involved is whether the court should have allowed the jury to pass upon the fact whether or not Secor was an independent contractor. Ordinarily, it falls within the province of the jury to determine disputed questions of fact, but in this proceeding there can be no dispute about any of the facts relating to the work performed by Secor or his method of accomplishing it. Most of the evidence was adduced by plaintiff's own witnesses, without any contradiction, and we think the court properly treated it as a question of law, and construed the relationship of

Secor to Associates Investment Company as that of an independent contractor. The judgment of the circuit court is therefore affirmed.

*Affirmed.*

JOHN J. SULLIVAN and BURKE, JJ., concur.