THOMAS ESSARY, Plaintiff-Appellee, v. LOUISIANA DOCK CO., Defendant-Appellant.

Fifth District    No. 77-265

Opinion filed November 22, 1978.

Fritz G. Faerber and Malcolm D. Durr, both of Alton (Lucas & Murphy, of St. Louis, Missouri, of counsel), for appellant.

Jerome J. Schlichter and David J. Letvin, both of Cohn, Carr, Korein, Kunin & Brennan, of East St. Louis, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Louisiana Dock Company appeals from the judgment of the circuit court of Madison County entered upon a jury verdict awarding $37,500 to plaintiff Thomas Essary for injuries he received while in defendant's employ. Plaintiff brought this action pursuant to the Merchant Marine Act of 1920 (46 U.S.C. §688 (1970)). Plaintiff's complaint sought damages for loss of portions of two fingers which he alleged was caused by the negligence of defendant and/or the unseaworthiness of its vessel.

The incident giving rise to plaintiff's injuries occurred on November 8, 1974. Approximately four months earlier plaintiff had been hired by defendant Louisiana Dock Company as a deckhand. At that time he was 18 years of age and had a 10th grade education. Plaintiff withdrew from high school at the age of 17 after having failed two grades. His duties while in defendant's employ included coupling barges together as well as sweeping and welding. In this capacity plaintiff worked on three vessels: The Gibralter I, the Gibralter II and the Joe Pickering.

On the day in question, the plaintiff was working on the Joe Pickering, a dredge boat. He received orders from his superior, Jack Slagle, to release a winch containing a cable running from the dredge to another winch or "deadman" located on shore. The two winches on this boat, installed just a week before, had not previously been operated by plaintiff. As he encountered some difficulty in loosening the winch, plaintiff jerked down the lever in order to release the cable. Plaintiff had been given no specific instructions concerning the operation of the winch from any of defendant's supervisory personnel and performed this task based solely on his observation of his co-workers. After plaintiff completed the jerking motion, the winch began to spin very rapidly, pulling plaintiff's left hand into it and severing portions of two fingers.

After subsequent operations to revise the stumps of these fingers, plaintiff resigned from his position at defendant company in order to seek other kinds of employment. He had difficulty in performing his job at Louisiana Dock Company, and had experienced pain in his fingers if they became cold or were bumped. Plaintiff considered entering the Navy or finishing school, neither of which plans were realized. Plaintiff then became employed at Deena Products, a clay lamp factory, where he received $2.35 an hour—25% less than his salary at the time he left the defendant's employ. After resigning from that job, he worked in a gasoline station for approximately four months. During the summer of 1976 he underwent further surgery on his ring finger. He was again hospitalized for three days and spent one month off work. After recovering from this third operation, he returned to Deena Products. Sometime after his attempt to attend night school had failed, plaintiff applied but was refused a job with the defendant company.

Plaintiff called two expert witnesses, one of whom was Arthur H. Zimmer, a licensed merchant marine officer. He opined that it would not be safe or sound practice to allow a young, inexperienced person to operate a winch without instruction. The second expert witness was a medical expert, Dr. Kenney. He testified that plaintiff would probably suffer further loss of mobility and dexterity in his fingers as well as continued pain. This testimony rebutted defendant's expert who stated that there would only be some weakness in the fingers.

Defendant first contends that the trial court erred in granting plaintiff's motion *in limine* which prohibited the defendant from introducing evidence that plaintiff had applied for and received benefits under the Federal Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §901 *et seq.* (1970)). One of the issues at trial was whether the plaintiff was a member of a crew of a vessel operating in the waters of the United States and thus entitled to the benefits of 46 U.S.C. §688 (1970), commonly called the Jones Act and the general maritime law of

the United States. Defendant argues that refusal to admit this evidence was reversible error since it constituted an admission against interest, and was therefore being admitted for a legitimate purpose other than to advise the jury that a plaintiff has been partly paid for his injury.

Defendant cites *Mokrzycki v. Olson Rug Co.*, 28 Ill. App. 2d 117, 170 N.E.2d 635, and *Skalon v. Manning, Maxwell & Moore, Inc.*, 127 Ill. App. 2d 145, 262 N.E.2d 146, in support of its contention. In these cases evidence of plaintiff's recovery of Workmen's Compensation was admitted to show the bias of a co-employee witness who might wish to gain some benefit for his employer in a case against a third party. However, evidence of longshoreman compensation in this case was to be used solely to indicate what plaintiff thought to be his legal status, not to show interest, bias or prejudice as defendant suggests in his brief.

Two Federal cases have dealt with similar problems: *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 11 L. Ed. 2d 4, 84 S. Ct. 1, and *Eichel v. New York Central R.R. Co.*, 375 U.S. 253, 11 L. Ed. 2d 307, 84 S. Ct. 316. As the Fifth Circuit's analysis of the relevancy of this type of evidence is particularly enlightening, we quote at length from its opinion in *Tipton v. Socony Mobil Oil Co.*, 315 F.2d 660, 662 (5th Cir. 1963):

> "Finally, appellant complains of the overruling of his motion to instruct appellee not to refer to, or introduce into evidence, the fact that appellant had received payments under the Longshoremen's and Harbor Workers' Compensation Act. Appellee argues that the motion was properly overruled because the fact that appellant received such payments went to show that appellant considered himself a drilling employee rather than a seaman; therefore, the fact that appellant received such payments was relevant to the issue of his status. We do not agree. Regardless of what the appellant, at any particular time, thought was his status, the issue of status depended upon objective facts. Appellant's beliefs, being wholly subjective, in no way affected the issue of status and hence was irrelevant."

In *Moran v. Tomita*, 54 Ill. App. 3d 168, 369 N.E.2d 302, the court stated:

> "In *Springer v. Illinois Transit Lines, Inc.* (1943), 318 Ill. App. 403, 48 N.E.2d 206, this court held that plaintiff's petition to the industrial commission was properly excluded as immaterial. In so holding, the court stated at page 409: 'The allegation in such petition as to employment did not tend to establish or change the actual status of the decedent at the time he received the injuries.' In *Redmon v. Sooter* (1971), 1 Ill. App. 3d 40, 274 N.E.2d 200, this court ruled that the exclusion of plaintiff's application to the industrial commission did not constitute reversible error. The court

stated at page 411: 'Such a statement is not, in any case, conclusive and essentially we agree with the *Springer* opinion that determination of plaintiff's legal status, which is an ultimate issue, must be drawn from factual circumstances surrounding his relationship with Green Giant Corporation rather than from his own conclusional statement, self-serving when made.' In *Redmon,* the court pointed out that the jury had heard the testimony of witnesses concerning plaintiff's employment, that the subject had been covered in final argument, and that the jury had been instructed on defendant's affirmative defense. In the present case, both parties testified as to their employment status at the time of the trip to Park Ridge and regarding the board of education's role in that trip. Counsel referred to the subject of plaintiff's employment during closing argument, and the jury was instructed on defendant's affirmative defense. The issue of plaintiff's employment was treated thoroughly at trial, and the trial court did not err in excluding evidence that plaintiff had filed a claim for benefits with the industrial commission." 54 Ill. App. 3d 168, 171-72.

■■ We adopt the reasoning of *Moran* and the Federal cases cited in this opinion. We therefore hold that the trial court did not err in excluding evidence that plaintiff had previously applied for benefits under the Longshoremen's and Harbor Workers' Compensation Act.

■■ ■ Defendant also challenges the sufficiency of the evidence. At the close of all the evidence defendant moved for a directed verdict, which motion was denied. Defendant now claims that this denial constitutes reversible error in that plaintiff had not sustained his burden of proof on the causal connection between defendant's negligence and plaintiff's accident. Substantive questions in Jones Act cases are to be governed by Federal law. The question of burden of proof in F.E.L.A. or Jones Act cases is reviewed in *Rogers v. Missouri Pacific R.R. Co.,* 352 U.S. 500, 506, 1 L. Ed. 2d 493, 499, 77 S. Ct. 443, 448, where the court declared:

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought."

*Rogers* has been cited favorably by this court in *Harp v. Illinois Central Gulf R.R. Co.,* 55 Ill. App. 3d 822, 370 N.E.2d 826, where the same standard, indeed the same wording, was used. In this case plaintiff produced evidence of several actions of the employer which could reasonably have led a jury to find that the employer's negligence had a causal connection with the injury. First, plaintiff was given no instruction regarding the proper method of handling the winch; second, if plaintiff's

method of handling the winch was proper, then the winch itself was unsafe as indicated by Captain Zimmer's testimony, because it required a man to place his hands in close proximity to the cogs, while other available models did not. These facts were properly submitted to the jury to determine the question of the relationship between defendant's possible negligence and plaintiff's injury.

■■ Defendant next contends that the trial court committed reversible error in allowing plaintiff's instructions numbered 11, 12 and 15 to go to the jury. Defendant objects because these instructions use the term "employee" rather than "seaman" in defining who may receive Jones Act benefits. Defendant cites *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 98 L. Ed. 143, 74 S. Ct. 202, in support of the proposition that the substantive issues in a Jones Act case are controlled by Federal rather than State law. Defendant further asserts that the Supreme Court in *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 190, 96 L. Ed. 205, 209, 72 S. Ct. 216, 218, has made a distinction between "seamen" and "employees" by stating: "Seamen were given the rights of railway employees by the Jones Act, but the definition of 'seaman' was never made dependent on the meaning of 'employee' as used in legislation applicable to railroads." Defendant concludes that these two cases indicate that Federal law would prohibit the use of instructions equating these two terms. In this case, however, any possible error has been averted by plaintiff's subsequent instructions numbered 19 and 20 concerning plaintiff's specific status. These instructions relate to the special interrogatory which required the jury to determine whether plaintiff was a crew member of the Joe Pickering at the time of his injury. Plaintiff's instruction 19 submitted the factual issue of plaintiff's status as a crew member to the jury and instruction 20 defined for the jury the term "vessel."[1] Defendant raised no objection to either of these instructions nor to the special interrogatory; thus he may not now complain that plaintiff was not found to be included in the special class of employees known as "seamen." Plaintiff's status was, in fact, the *first* question to be determined by the jury and its answer affirmed that he was a seaman. The court committed no reversible error. Moreover, no harm has resulted to the defendant from the use of the generic term "employee" in plaintiff's instructions numbered 11, 12 and 15, since the jury specifically found plaintiff to be a seaman.

■■ Finally, defendant contends that the court erred in failing to declare a mistrial on the basis of certain remarks made by plaintiff's attorney during closing argument. These comments inferred that some connection existed

---

[1] Under *Daughdrill v. Diamond "M" Drilling Co.*, 305 F. Supp. 836 (W. D. La. 1969), status as "seaman" so as to permit recovery under this section is virtually synonymous with being a "member of the crew of a vessel," reversed on other grounds at 447 F.2d 781 (5th Cir. 1971).

between defendant's refusal to rehire plaintiff and plaintiff's institution of this lawsuit.. Defendant objected at the time the statement was made and the court sustained the objection on the basis that there had been no showing that the suit had been filed at the time plaintiff was denied a job. The court may exercise its sound discretion with regard to the propriety of counsel's comments on the evidence. (*Jackson v. Whittinghill*, 39 Ill. App. 2d 315, 324, 188 N.E.2d 337, 341.) Under the circumstances present in this case, the court has sustained an objection to an improper remark and where no further remarks of this kind are made, the emphasis on the improperly mentioned subject is so slight as to be nonprejudicial. Plaintiff's counsel's remark was not so inflammatory as to require reversal.

For the foregoing reasons, we affirm the decision of the circuit court of Madison County.

Affirmed.

EBERSPACHER, P. J., and KARNS, J., concur.