DEBBIE SMITH, Plaintiff-Appellee, *v.* JAMES A. SEIBER, Defendant-Appellant.

Fifth District   No. 5—83—0364

Opinion filed July 31, 1984.—Rehearing denied September 4, 1984.

William C. Evers III, of Collinsville, for appellant.

Edward J. Kionka, of Kionka and Associates, of Carbondale, and John E. Norton, of John E. Norton & Associates, P.C., of Belleville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, James A. Seiber, appeals from a judgment of the circuit court of St. Clair County awarding plaintiff, Debbie Smith, $2,659.75 compensatory damages and $20,000 punitive damages for personal injury.

Defendant contends on appeal that: (1) the trial court erred by denying defendant's motion to dismiss count II of plaintiff's complaint which alleged wilful and wanton misconduct; (2) the trial court erred by allowing the plaintiff's mother to testify regarding a telephone conversation; (3) plaintiff failed to prove that she was an invitee; (4) the jury's verdict was against the manifest weight of the evidence; (5) a portion of plaintiff's closing argument to the jury denied defendant a fair trial; (6) the trial court erred by submitting the issue of punitive damages to the jury; and (7) the punitive damages awarded were excessive.

Plaintiff's complaint alleged, *inter alia,* that on August 7, 1980, she was a business invitee on the defendant's premises and suffered injuries due to defendant's negligence. Subsequently, plaintiff was granted leave to add a second count to her original complaint in which she sought punitive damages for defendant's wilful and wanton misconduct.

Plaintiff testified that she and her husband drove past a former dwelling of hers located at 8716 Botanical Street in Caseyville, and

noticed that the house was unoccupied. Plaintiff said she knew that her mother was looking for a house to rent, so she found the telephone number of Seiber Sanitation, from whom she had previously rented the house, and suggested that her mother call and ask if the house was for rent. Plaintiff testified that around 5 p.m. on August 7, 1980, she and her family, including her mother, went to look at the house at 8716 Botanical. According to plaintiff, the gate to the driveway was open and there were no signs of any kind posted on the house or around the property. Plaintiff testified that she and her family approached the front door of the house but found it to be nailed shut. Consequently, she went to the side of the house, where there was a porch and another door. This side door was open, so the family entered and examined the house's interior. Plaintiff stated that afterward she stepped down from the house's kitchen onto the porch and the porch collapsed, resulting in a fracture to her ankle.

Marie Sutton, plaintiff's mother, testified, over defendant's objection, that she called the telephone number plaintiff had given her sometime around 12 p.m. on August 7, 1980. Mrs. Sutton testified that the woman who answered the phone identified the number as belonging to Seiber Sanitation. Mrs. Sutton stated that she asked the woman who answered the phone if she could speak with Jim Seiber. Mrs. Sutton stated that the woman who answered, who identified herself as defendant's wife, told Mrs. Sutton that defendant was not there and asked if she could help. Mrs. Sutton testified that she asked Mrs. Seiber if the house plaintiff had seen on Botanical Street was for rent. According to Mrs. Sutton, Mrs. Seiber told her that she thought the house was for rent, gave Mrs. Sutton the address, and told Mrs. Sutton that she could go look at the house. Mrs. Sutton related that Mrs. Seiber also informed her that she believed that the rent was $150 and informed Mrs. Sutton that defendant handled the rental of the property. Mrs. Sutton also gave testimony which corroborated plaintiff's testimony as to what had occurred when the family investigated the premises.

William Roy Baum, an employee of Seiber Sanitation, testified that the house on 8716 Botanical Street had been rented by defendant in the past and that he had repaired the porch for defendant in 1978 or 1979. Mr. Baum stated that defendant supplied him with used lumber to repair the porch at 8716 Botanical Street and that there were no bannisters on the porch. Mr. Baum testified that since the porch was leaning when he went to repair it, he leveled it and nailed it back to the house. Mr. Baum stated that the wood on the porch had begun to rot and that defendant told him to do what he could with the porch

and that more permanent repairs could be made later if necessary. Mr. Baum testified that he and defendant put up the gate to the driveway and had placed "No Trespassing" and "Keep Out" signs on the gate and the house.

John F. Carmen, a tenant of defendant, testified that he was presently living at the house located at 8716 Botanical Street, the premises in which plaintiff's injuries were alleged to have occurred. He said he had lived there once before in 1977 or 1978. Mr. Carmen testified that the porch was in bad condition and rotten when he lived there. Mr. Carmen said that in 1978 he had asked defendant to repair something in the house but defendant refused to do so. Mr. Carmen stated that he had moved back to 8716 Botanical Street because he had been evicted from his home and was in dire need of housing. According to Mr. Carmen's testimony, the house was badly in need of repairs.

Plaintiff's husband, Haven Smith, testified that when he rented from defendant he had requested that defendant make a number of repairs on the premises, but defendant never had the repairs made.

Dr. Henry M. Hurd testified as to plaintiff's injuries.

Defendant testified that he rents very little property and was primarily in the trash hauling business. He stated that he knew wood was subject to dry rot and had the porch at 8716 Botanical repaired sometime in 1979 because it was rotten. Defendant related that he supplied lumber for the porch repair which had previously been used for concrete forms. Defendant said that he believed that the lumber had been chemically treated so that it would not rot. Over defendant's objection, a financial statement showing defendant's net worth to be $1,692,870 was admitted into evidence. Defendant further testified that he did not wish to rent 8716 Botanical Street in 1980 and denied giving plaintiff permission to go onto the property.

Clifford R. Phelps, who resided at 8720 Botanical Street at the time of plaintiff's injury, testified that in May 1980 a tenant of 8716 Botanical Street had damaged the side porch of the house by backing a truck into it, knocking it off its foundation. Mr. Phelps said that the porch was in a broken-down state after that incident. Mr. Phelps testified that on the date plaintiff fell there were "Keep Out" and "No Trespassing" signs posted at 8716 Botanical Street and that when he left for work that morning the gate had been closed.

Mr. Phelps' wife, Wilma Phelps, and his son, Terry Phelps, both testified that they saw plaintiff prior to her fall. Both Wilma and Terry Phelps corroborated Mr. Phelps' testimony that there were "Keep Out" and "No Trespassing" signs posted at 8716 Botanical

Street and the gate was closed. Terry Phelps also related that he observed plaintiff fall and that the porch was in a broken-down condition.

Irma Seiber, defendant's wife, testified that she had not talked with anyone about renting the property at 8716 Botanical Street in August 1980 and denied that she told anyone to go look at the property.

James Eilering, a carpenter, testified in rebuttal on plaintiff's behalf. Mr. Eilering described dry rot as a progressive deterioration of wood caused by moisture. He said that untreated wood should never be used anywhere in close relation to the ground because of the danger of dry rot. Mr. Eilering testified that dry rot would be visually noticeable and would make wood feel soft and spongy. Mr. Eilering said that dry rot cannot be repaired and that such deterioration cannot be stopped. Mr. Eilering further testified that the side porch at 8716 Botanical Street should have had a railing on it and that it was dangerous without a railing.

■ Defendant, relying primarily on *Pendowski v. Patent Scaffolding Co.* (1980), 89 Ill. App. 3d 484, 411 N.E.2d 910, urges that plaintiff improperly attempted to state a cause of action against him by alleging that identical acts constitute both ordinary negligence and wilful and wanton misconduct and that, as a result, count II of plaintiff's complaint should have been dismissed. We do not agree. Defendant's position has been rejected by our supreme court, which has held that mirror allegations of wilful and wanton misconduct will suffice to state a cause of action. *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469-70, 415 N.E.2d 1015, 1018; see also *Ingram v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 456, 458, 438 N.E.2d 1194, 1196-97.

■ Defendant next contends that the trial court erred by allowing Marie Sutton to testify as to an alleged telephone conversation with defendant's wife. Defendant maintains that the testimony was incompetent because Mrs. Sutton was unable to identify the voice of the person to whom she was speaking. Defendant relies on the general rule that before testimony regarding a telephone conversation will be admitted into evidence, the party testifying must be able to identify the voice of the person to whom the witness was speaking. *People v. Metcoff* (1946), 392 Ill. 418, 420-21, 64 N.E.2d 867, 868.

Plaintiff urges that Mrs. Sutton's testimony regarding the telephone conversation was admissible under an exception to the general rule. She cites the rule set forth in *Godair v. Ham National Bank* (1907), 225 Ill. 572, 575, 80 N.E. 407, 408, and reiterated in *Korch v.*

*Indemnity Insurance Co.* (1946), 329 Ill. App. 96, 101-02, 67 N.E.2d 298, 301, where the court stated:

> "The rule enunciated in the *Godair* case has never been overruled or modified, and has generally been followed in this State. The essence of that rule is that any one who answers a telephone call at a place of business is presumed to speak for the company in respect to the general business carried on by such company; that a business concern, by installing a telephone to be used in the transaction of its affairs, impliedly invites the public to make use of that means of communication which is thereby made an agency for the transaction of its business, and persons dealing with it by telephone have the right to assume that the one answering the telephone of the company is clothed with authority to transact the business conducted."

Plaintiff points out that the rule stated in *Korch* has subsequently been applied by Illinois courts (*Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 382-83, 208 N.E.2d 12, 18; *Holland v. O'Shea* (1950), 342 Ill. App. 127, 129-30, 95 N.E.2d 515, 517) and urges that the rule allows the admission of Mrs. Sutton's testimony regarding the telephone conversation in the case at bar. We agree.

At least one of the businesses conducted by defendant through the use of the telephone number of Seiber Sanitation was his rental business. Both defendant and his wife admitted that when they advertised property for rent they utilized the telephone number of Seiber Sanitation. Defendant also testified that on occasion his tenants used the Seiber Sanitation telephone number to contact him and that Seiber Sanitation employees performed maintenance work on defendant's rental property. Plaintiff testified that when she had rented from defendant in 1977 or 1978, she used the Seiber Sanitation telephone number to contact defendant. Given the facts of the instant case, we conclude that the rental business was part of the general business carried on by defendant through the use of the Seiber Sanitation telephone. Therefore, under the rule stated in *Korch*, Mrs. Sutton's testimony regarding her telephone conversation with defendant's wife was competent, and the trial court correctly admitted it into evidence.

■ Defendant also contends that plaintiff failed to establish that she was an invitee on defendant's property. As plaintiff pointed out during oral argument, however, this contention ignores the fact that the jury found defendant guilty of wilful and wanton misconduct. Hence, even if plaintiff could be said to be a trespasser, defendant would have been guilty of committing a breach of his duty of care in the instant case. See *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d

83, 86, 343 N.E.2d 261, 264.

■ Defendant next urges that the jury's verdict is contrary to the manifest weight of the evidence. We do not agree. As we observed in *Kofahl v. Delgado* (1978), 63 Ill. App. 3d 622, 624, 380 N.E.2d 407, 410, "[i]n order for a verdict to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." We conclude that sufficient evidence was presented in the case at bar from which the jury could reasonably return a verdict in favor of plaintiff, and we decline to second-guess the jury's decision.

■ Defendant next maintains that he was denied a fair trial by certain remarks by plaintiff's counsel during closing argument which attacked the credibility of defense witness Clifford Phelps. Specifically, defendant complains about a remark by plaintiff's counsel which suggested that defendant purchased 8716 Botanical Street from Mr. Phelps so that Mr. Phelps would not lose the property to his creditors and then used this fact to obtain Mr. Phelps' testimony. Although the brief remark complained of was admittedly improper, an objection to this line of argument was immediately sustained by the trial court and plaintiff's attorney refrained from any further related remarks. We find that any possible prejudice resulting from plaintiff's counsel's remark was cured when the trial court promptly sustained defense counsel's objection. See *Essary v. Louisiana Dock Co.* (1978), 66 Ill. App. 3d 182, 187-88, 383 N.E.2d 731, 735.

■ Defendant also asserts that the trial court erred by submitting the issue of punitive damages to the jury. We disagree. We conclude that in the instant case the question of whether defendant was guilty of wilful and wanton misconduct so as to warrant an award of punitive damages was properly one for the jury. (See *Swearingen v. Le Conte* (1972), 6 Ill. App. 3d 770, 771-72, 286 N.E.2d 128, 129-30; *Meiners v. Moyer* (1970), 119 Ill. App. 2d 94, 100, 255 N.E.2d 201, 203.) While the evidence was conflicting, we cannot say as a matter of law that punitive damages were unwarranted in the instant case.

■ Finally, defendant maintains that the punitive damages award was excessive. Again we must disagree. The amount of punitive damages awarded a plaintiff is a matter for the discretion of the jury, and a reviewing court will reduce the amount of such an award only when it is clearly excessive. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 711, 450 N.E.2d 1199, 1206.) Additionally, contrary to defendant's argument, the amount of a punitive damages award is not required to be proportional to the amount of compensatory damages. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199.) Here, considering the

nature of the wrong complained of, the financial status of defendant, and the potential liability of defendant (see *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 712-13, 450 N.E.2d 1199, 1207), we are of the opinion that the punitive damages awarded were not clearly excessive.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.