WILLIAM J. JINES, Plaintiff-Appellee, v. JAMES A. SEIBER, Defendant-Appellant.

Fifth District   No. 5—88—0251

Opinion filed January 16, 1990.

William C. Evers III, of Collinsville, for appellant.

Harry J. Sterling and John Long, both of Sterling, Kelley & Long, P.C., of Fairview Heights, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Plaintiff, William J. Jines, filed an action in the circuit court of St. Clair County against James Seiber, alleging assault and battery and seeking both compensatory and punitive damages. Seiber filed a counterclaim alleging, *inter alia*, assault and battery, trespass and defamation of character. Pursuant to a jury verdict, judgment was entered against Seiber in the amount of $8,500 on Jines' complaint. The jury also found against Seiber on his counterclaim.

The record reveals that Seiber owned property adjacent to Jines' property, but had no access from public roads. A private roadway ran between Jines' property and that of an adjacent landowner, and Seiber could reach his property via this roadway. Seiber had requested an easement, but had not been given one. Nevertheless, Seiber continued to use the road for access. On September 1, 1986, as Seiber was using the road, he was confronted by Jines. During this confrontation, Seiber struck Jines over the head with a walking stick. Seiber was charged with the criminal offense of battery, but was acquitted. Jines also filed the present action seeking civil damages. The jury rendered a verdict in Jines' favor, awarding him $2,000 in compensatory damages and $6,500 in punitive damages.

On appeal, Seiber argues that the claim for punitive damages should have been stricken and not sent to the jury, maintaining that the imposition of punitive damages in a civil case violates the eighth amendment to the United States Constitution because it imposes criminal sanctions without the protection of the Code of Criminal Procedure and therefore constitutes cruel and unusual punishment. Seiber also maintains that because of his acquittal of the criminal charge, the imposition of punitive damages violates the constitutional bar against double jeopardy.

We address Seiber's double jeopardy argument first. Seiber maintains that the imposition of punitive damages in light of his acquittal on the criminal charge violates the prohibition against double jeopardy contained in the fifth amendment of the United States Constitution. He maintains that punitive damages are criminal in nature, that they

are a form of punishment, and therefore subject to prohibition against double jeopardy. In support of his argument, Seiber cites *Kennedy v. Mendoza-Martinez* (1963), 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554. In *Kennedy*, the Supreme Court held that the fifth and sixth amendments applied to all forms of punishment, not just traditional criminal actions. In *Kennedy*, the high court struck down a statute which divested a person of his citizenship for leaving or remaining outside the United States for purposes of evading the draft.

■ The critical distinction for purposes of double jeopardy, however, is that *Kennedy* dealt with the exercise of governmental power, whereas in this case we are dealing with litigation between private parties. In *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, the Supreme Court held that civil as well as criminal sanctions constituted punishment where such sanctions serve the traditional goals of punishment—deterrence and retribution. Although punitive damages are penal in nature and serve to punish a wrongdoer, the court in *Halper* went on to state that nothing in its opinion precluded a private party from seeking damages for conduct that previously was the subject of criminal prosecution and punishment and that the protection of the double jeopardy clause was not triggered by litigation between private parties. The double jeopardy clause of the fifth amendment applies to proceedings that are "essentially criminal" in nature. (*Breed v. Jones* (1975), 421 U.S. 519, 44 L. Ed. 2d 346, 95 S. Ct. 1779; *Helvering v. Mitchell* (1938), 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630.) Because punitive damages are not "essentially criminal" in nature, their imposition does not violate the fifth amendment prohibition against double jeopardy. (*Hansen v. Johns-Manville Products Corp.* (1984), 734 F. 2d 1036.) Seiber also raises a double jeopardy argument under article I, section 10, of the Illinois Constitution. (Ill. Const. 1970, art. I, §10.) He cites no authority, however, supporting his argument that an award of punitive damages violates the Illinois Constitution's prohibition against double jeopardy, and while we find no case law on point, we believe our analysis of his argument as to the United States Constitution is equally applicable to the Illinois Constitution.

■ We next address Seiber's claim that the imposition of punitive damages constitutes cruel and unusual punishment. Again, he bases this argument on the premise that punitive damages are criminal in nature, and again we reject that premise. Seiber argues that because punitive damages are imposed without benefit of the protection afforded by the Code of Criminal Procedure, they constitute cruel and unusual punishment. Again, Seiber cites no authority supporting this

proposition. In *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.* (1989), 492 U.S. 257, 106 L. Ed. 2d 219, 109 S. Ct. 2909, the Supreme Court considered whether to extend the excessive fines clause of the eighth amendment to awards of punitive damages. Though Seiber's challenge to the punitive damages award is not made under the excessive fines clause, we believe the Supreme Court's rationale for not extending the excessive fines clause to punitive damages is equally applicable in this case. We therefore hold that the eighth amendment, as applied to the States through the fourteenth amendment, in no way precludes the imposition of punitive damages in a suit between private parties. Based upon an examination of the history and nature of punitive damages and eighth amendment jurisprudence, the court concluded that the eighth amendment was intended to apply to the prosecutorial powers of government and that it "places limits on the steps a government may take against an individual, whether it be keeping him in prison, imposing excessive monetary sanctions, or using cruel and unusual punishments." (*Browning-Ferris*, 492 U.S. at 275, 106 L. Ed. 2d at 238, 109 S. Ct. at 2920.) We therefore hold that the imposition of punitive damages does not violate the eighth amendment's ban on cruel and unusual punishment.

We next consider Seiber's argument that the amount of the punitive damage award, $6,500, was excessive. He argues that the amount of the punitive damage award bears no reasonable relationship to the actual damage award and that Jines' injury was not serious. The amount of punitive damages to be awarded rests with the discretion of the trier of fact and will not be disturbed on review unless clearly excessive. (*Smith v. Seiber* (1984), 127 Ill. App. 3d 950, 469 N.E.2d 231.) In determining whether a punitive damages award is excessive, our courts have looked to: (1) the nature and enormity of the wrong; (2) the financial status of the defendant; and (3) the potential liability of the defendant. (*Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199.) In the present case, Seiber deliberately struck Jines over the head with a walking stick. Although he maintained that Jines was the aggressor and that he was merely defending himself, the jury clearly resolved that factual dispute against him. Regarding the second factor, although there was no indication of Seiber's exact net worth, evidence was elicited that Seiber was a man of substantial financial means. Further, a punitive damages award may stand absent evidence of the defendant's financial status as it is not the plaintiff's burden to present such evidence. (*Deal v. Byford* (1989), 127 Ill. 2d 192, 537 N.E.2d 267.) As to the third factor, which deals with possible multiple awards, Seiber will not

be subjected to further punitive damage claims as a result of his conduct in this particular case. A $6,500 punitive damage award is not excessive in light of the factors discussed above. As to Seiber's argument that the amount of the punitive damages greatly exceeds the amount of the compensatory award, there is no requirement that a punitive damage award bear any proportional relationship to the amount of the compensatory damage award. (*Loitz v. Remington Arms Co.* (1988), 177 Ill. App. 3d 1034, 532 N.E.2d 1091; *Smith v. Seiber* (1984), 127 Ill. App. 3d at 957, 469 N.E.2d at 236.) We conclude that the punitive damage award is not excessive and decline to reduce the amount.

■ Seiber next argues that the trial court erred in refusing to give IPI Civil 2d No. 5.01 (Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971)), which states:

"If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The witness was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

4. No reasonable excuse for the failure has been shown."

The witness in question was the emergency room doctor who Seiber maintains could have provided valuable insight into the nature and extent of Jines' injury and whose testimony could have had an impact on the jury's assessment of damages.

Seiber offers no evidence or argument that the witness was any more under Jines' control than his or that he did not have equal access to the witness. Under such circumstances, the instruction is not required and no error can be assigned to the trial court for refusing to give it. *J.L. Simmons Co. v. Firestone Tire & Rubber Co.* (1984), 126 Ill. App. 3d 859, 467 N.E.2d 327, *aff'd* (1985), 108 Ill. 2d 106, 483 N.E.2d 273; *Chuhak v. Chicago Transit Authority* (1987), 152 Ill. App. 3d 480, 504 N.E.2d 875; *Scattone v. Clark* (1983), 120 Ill. App. 3d 290, 457 N.E.2d 1077.

■ Finally, Seiber argues that the trial court erred in several evidentiary rulings and that he was prejudiced thereby. Specifically, Seiber refers to plaintiff's closing argument wherein he asked the

jury, "How do you punish a millionaire?" and when plaintiff asked Seiber if he had been involved in litigation with people over the easement he claimed. Seiber maintains that there was no evidence of his net worth in the record and that plaintiff's unsupported characterization of him gave the jury the impression that he could pay a large punitive damage award. Even if erroneous, neither of these statements is such that Seiber would have been prejudiced and by no stretch of the imagination are they such that Seiber was denied the right to a fair trial. The trial as a whole was fair and the evidence clearly supports the jury's verdict. *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 501 N.E.2d 830.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

GOLDENHERSH and HOWERTON, JJ., concur.