DAVID D. WILSON, Plaintiff-Appellee, *v.* MILLIE COLSTON, d/b/a Millie's Tavern, Defendant—(Eugene Koehler, Defendant-Appellant).

Fifth District   No. 82—571

Opinion filed December 7, 1983.

John L. McMullin and Thomas J. Horn, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellant.

Callis & Hartman, P.C., of Granite City (Michael J. Meehan, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

This appeal presents the question whether evidence of a defendant's financial worth must be introduced before an issue of punitive damages may be submitted to a jury.

The plaintiff, David Wilson, 19 years old at the time he was injured, suffered severe facial wounds as a result of being struck by the automobile of the defendant, Eugene Koehler. At the time he was struck, about 2:30 a.m. on June 18, 1978, plaintiff was attempting, by the side of the road, to change a fuse on his motorcycle to correct an electrical difficulty affecting the operation of the headlight of the vehicle. Prior to trial counsel for defendant admitted that his client's conduct had been negligent but denied that it had been wilful and wanton. At trial the defendant, called by the plaintiff as an adverse witness, testified that he had arrived at Millie's Tavern after work at about 7 p.m., that while there he had consumed twelve 12-ounce bottles of beer and four "straight shots" of whiskey, and that he had left the tavern about seven hours later when it closed at 2 a.m., about a half hour before the accident occurred. The witness subsequently admitted while testifying that he was both drunk and speeding when he collided with the plaintiff as he drove home from the tavern. The jury awarded plaintiff compensatory damages in the amount of $150,000 and punitive damages in the amount of $25,000. The defendant Koehler appeals raising essentially three issues: (1) whether the trial court erred in submitting the issue of punitive damages to the jury because there was no evidence of defendant's financial condition upon which it could base an award of such damages; (2) whether plaintiff remarked improperly during closing argument upon the punishment defendant had received in the criminal proceeding that arose out of the incident; and (3) whether the trial court committed reversible error in admitting into evidence slides taken of plaintiff's face immediately prior to surgery undertaken during the early morning hours following the collision.

With respect to the first issue defendant raises, he argues that because the jury had no evidence of defendant's net worth, its determination of punitive damages was based improperly upon mere speculation and conjecture and was therefore assessed arbitrarily. Defendant

argues that unless the jury knows the financial condition of a defendant, it is handicapped in its ability to assess an amount that would adequately punish the defendant, punishment being one of the purposes of exemplary damages. Defendant cites us to no authority for the proposition that evidence of the financial condition of a defendant is a necessary prerequisite to an award of punitive damages, nor has our research disclosed any.

Illinois courts appear not to have addressed the issue expressly. In *Mullin v. Spangenberg* (1884), 112 Ill. 140, the supreme court ruled that though a plaintiff entitled to punitive damages may offer testimony concerning a defendant's wealth, a defendant may offer such evidence by way of rebuttal and not as an independent defense. The court in *Mullin* suggested, but did not rule, that a plaintiff seeking exemplary damages need not put on evidence of a defendant's financial resources in order to prevail:

> "Where a plaintiff entitled to vindictive damages offers no evidence of the defendant's wealth with a view of enhancing them, he in effect says, 'I ask no damages against the defendant except as a mere individual, without any regard to his property or estate, whether it be much or little,'—and in that kind of a case the jury have no right to give any more damages than they would if it had affirmatively appeared the defendant was without pecuniary resources. But where the testimony is offered by the plaintiff, he does it for the purpose of enhancing the damages. By offering it he in effect says, 'I ask in the way of damages something more than I would be entitled to recover from the defendant as a mere individual, without regard to his pecuniary circumstances.' In doing this, the plaintiff tenders a new issue of fact, which opens up the question to both sides." (112 Ill. 140, 145-46.)

Courts in other jurisdictions that have considered the question of whether proof of a defendant's wealth is mandatory to the recovery of punitive damages have, without exception, held to the contrary. See *Nienstadt v. Wetzel* (Ariz. App. 1982), 133 Ariz. 348, 651 P.2d 876; *Vossler v. Richards Manufacturing Co.* (1983), 143 Cal. App. 3d 952, 192 Cal. Rptr. 219; *Rinaldi v. Aaron* (Fla. 1975), 314 So. 2d 762; *Carrick v. McFadden* (1975), 216 Kan. 683, 533 P.2d 1249; *Rogers v. Florence Printing Co.* (1958), 233 S.C. 567, 106 S.E.2d 258; *Sears v. Summit, Inc.* (Wyo. 1980), 616 P.2d 765.

■■ ■ We think these courts have adopted a proper rule and one that is in harmony with the views expressed in *Mullin*. It is elementary that the purposes of punitive damages are to punish and to deter.

(*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210; *Fopay v. Noveroske* (1975), 31 Ill. App. 3d 182, 334 N.E.2d 79.) It is, likewise, elementary that a defendant of some means may well not be punished or deterred by an award that would punish and deter a defendant of lesser means. In the case of a defendant of greater means, the plaintiff may, if he wishes, offer evidence of the defendant's financial resources, in accord with *Mullin*, to enhance an award of exemplary damages so that the award will, indeed, serve to punish and to deter. In the case of a defendant of more modest means, however, the plaintiff would have no need to enhance the award of punitive damages in order to accomplish their purpose and may obtain an award for such damages without introducing evidence of the defendant's monetary resources. The defendant has not proposed and we have not discerned any problem with regard to due process involved in permitting punitive damages to be assessed without evidence· of a defendant's net worth. In view of our holding that a plaintiff need not introduce evidence of a defendant's financial worth to obtain an award of punitive damages, the trial court did not err in submitting the issue of punitive damages to the jury in the absence of such evidence.

■ We turn to defendant's contention that the plaintiff remarked improperly during closing argument upon the punishment defendant had received in the criminal proceeding that arose out of the incident. Prior to trial defense counsel moved that "the plaintiff and all the witnesses be instructed not to mention what sort of punishment my man received or the ticket he got in the accident. I think the punishment that he had is irrelevant." The trial court ruled defendant's plea of guilty in the criminal proceeding admissible as a prior admission in the civil proceeding but would allow no "argument or evidence about the conviction or about any punishment." The plaintiff points out correctly in his brief that defense counsel—not counsel for plaintiff—first referred to defendant's punishment concerning the criminal charge, urging the jury as follows during closing argument:

"Please be fair. The plaintiffs are coming here and they are saying, 'Well, because Gene had all this to drink, this is obviously something you ought to punish him for. You ought to punish him for it.' But you heard the evidence here in court. Gene got arrested for this. He pled guilty to the charge when he was brought to court on it. He has been punished already."

There followed this colloquy between court and counsel for both parties:

"[Counsel for plaintiff]: I object, your Honor. I think he is

opening—I'll waive the objection. I think he has just opened the door.

THE COURT: All right.

[Counsel for defendant]: I've opened the door. Gene has been punished already, folks. They put the evidence on. They criticized us for not having him come testify.

Now, the criminal law, as some of you mentioned as we were asking the questions early on in the case in selecting the jury—the criminal law has a way to deal with these things. It's our position that that is where you should leave it."

Counsel for plaintiff subsequently made the following remark, which defense counsel argues constitutes reversible error:

"I suggest to you, ladies and gentlemen, that there needs to be punishment here. The facts demand it. The facts are overwhelming and they demand it. [Defense counsel] says, 'Be fair.' He says and I quote, 'The defendant ought to be punished.' How does he argue that? He says, 'You know, Gene Koehler has already been punished by the criminal courts.' What Gene Koehler got was a slap on the wrist, a slap on the wrist."

The record shows that defense counsel not only opened the door to a discussion of the punishment defendant received in the criminal proceeding and admitted to having done so but also attempted to use defendant's punishment in the criminal proceeding to advantage in the civil litigation. He will not now be heard to complain of plaintiff's response.

■■ ■ With regard to defendant's final contention on appeal, the erroneous admission of four slides in color, designated as plaintiff's exhibit No. 17, depicting plaintiff's injured face, defendant argues that no foundation was laid for admission of the slides into evidence and that the slides were not admissible into evidence because they were part of the medical record of plaintiff's surgeon, which was not admitted into evidence. Defendant asserts that the "[a]dmission of the [slides] could only have the effect of inciting the jury" and ascribes error for that reason. However, the record shows that defendant expressly acknowledged at trial that the issue with respect to the admissibility of the slides was one of relevance, not foundation. Furthermore, we have examined the slides. There is no indication in the record that the slides were projected before the jury. As slides, the depictions are small, and without projection details about them are difficult to discern. Our observation of them coupled with our reading of the record indicates that the jury would have been moved less by the slides to which the defendant objects than by the testimony of

plaintiff's witnesses who described the manner in which he suffered his injuries and the testimony of the surgeon and his mother, who indicated the extent of them. The surgeon testified, in explaining certain medical terminology, that the part of plaintiff's nose that "flares out" was "almost completely cut off of his face" and that plaintiff suffered, in addition to numerous fractures of the bones of his face, a laceration "almost separating the left lip from the cheek and the nose." Plaintiff's mother testified that, when summoned to the emergency room, she was unable to recognize her son by his facial features and walked to another bed to find him. "[T]hen I came back to him and recognized his feet. That's the only part of him I could recognize at the time." We think that if the trial court erred in admitting the slides for the remaining reason defendant advances—and we need not decide that question—in view of the testimony as to the nature and extent of the plaintiff's injuries and the limitations of the unprojected slides themselves, any error in the admission of them into evidence could have been, at most, harmless.

Affirmed.

HARRISON, P.J., and KASSERMAN, J., concur.