TERRY WARREN et al., Plaintiffs-Appellees, v. ROBERT LeMAY et al., Defendants-Appellants.

Fifth District No. 5—84—0542

Opinion filed March 24, 1986.—Rehearing denied April 23, 1986.

554

558

Edward T. McCarthy, of Burroughs, Simpson, Hepler, Broom & McCarthy, of Edwardsville, for appellant Century 21-Baebler Realtors.

Ted L. Perryman, of Roberts, Perryman & Bomkamp, Inc., of Belleville, for appellant Orkin Exterminating Company.

Robert P. LeChien, of LeChien & Associates, Ltd., of Belleville, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Defendants Orkin Exterminating Company (Orkin) and Century 21-Baebler Realtors (Century 21) appeal from a judgment and order of the circuit court of St. Clair County awarding plaintiffs, Terry and

Rondice Warren, actual and punitive damages and attorney fees for damage to their home caused by termite infestation. Plaintiffs cross-appeal as to the amount of attorney fees and costs they received. Plaintiffs also cross-appeal from a judgment in favor of defendants Robert and Karen LeMay, but request reversal and remand of that judgment only if a new trial is otherwise granted to defendants Orkin and Century 21. Finally, plaintiffs move for an award of their reasonable attorney fees and costs on this appeal. For the reasons which follow, we affirm the circuit court's judgment in favor of plaintiffs and against defendants Orkin and Century 21, and its award of statutory attorney fees and costs to plaintiffs. In addition, we grant plaintiffs' motion for attorney fees and costs on this appeal, and remand the cause for further proceedings regarding the amount of fees and costs to be awarded.

The home at issue in this case was purchased by plaintiffs, the Warrens, from defendants the LeMays. The Warrens financed the purchase through Town & Country Mortgage Company with a mortgage guaranteed by the Veterans Administration (VA). A requirement of VA financing was that a termite inspection be made of the property at the sellers' expense. Defendant Orkin was selected to handle this inspection and prepare the necessary report. All details of obtaining and processing Orkins' report were performed by the sellers and the real estate agency representing them, defendant Century 21. The termite report was prepared, financing was approved, and in April of 1981, the sale was closed. The purchase price paid by plaintiffs was $41,000.

Neither plaintiffs, Town & Country Mortgage Company, nor the VA was advised of any current termite infestation or damage to the home at the time of the sale. In fact, termite infestation and damage were so extensive that by the end of 1982, the home was unsafe for human occupancy, and plaintiffs were forced to move. When the extent of the damage became apparent, plaintiffs filed suit against defendants the LeMays, Orkin, Century 21 and others in the circuit court of St. Clair County, seeking actual and punitive damages and attorney fees for the property damage they sustained.

Plaintiffs' complaint was amended numerous times during the course of the proceedings, but the case was ultimately submitted on the following theories. Defendants the LeMays were alleged to have intentionally misrepresented the condition of the home in that they represented to plaintiffs that it was free from termites and termite damage when they knew that this representation was false. Defendant Century 21 was alleged to have been guilty of wilful and wanton

misconduct, violation of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, par. 5701 *et seq.*) and rules of the Department of Registration and Education promulgated thereunder, and violation of the Consumer Fraud and Deceptive Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*). Defendant Orkin was also alleged to have violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*) in addition to being guilty of negligence and wilful and wanton misconduct.

Following a lengthy jury trial, a general verdict was rendered in favor of plaintiffs and against defendants Orkin and Century 21, and plaintiffs were awarded actual damages in the amount of $34,700. The jury also rendered separate verdicts in favor of plaintiffs and against defendants Orkin and Century 21 respectively, assessing $25,000 in punitive damages against each. In addition, the jury answered numerous special interrogatories finding, *inter alia,* that plaintiffs had failed to meet their burden of proof on their claim against defendants the LeMays, but had proved all of their claims against Orkin and Century 21, and that defendants Orkin and Century 21 had each shown an utter indifference to or conscious disregard for plaintiffs. The circuit court entered judgment on the jury's verdicts. Thereafter, the court granted plaintiffs' petition for attorney fees and costs pursuant to section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 270a(c)), but reduced the fees awarded to $17,464.50 from the $37,563.75 requested, and awarded only $335.42 of the $3,959.85 in requested costs. At the same time, the court denied various post-trial motions filed by defendants Orkin and Century 21. This appeal followed.

A pivotal issue before us is applicability of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*), under which both defendant Orkin and defendant Century 21 were found liable. Section 2 of the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262) provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in section 2 of the 'Uniform Deceptive Trade Practices Act,' approved August 5, 1965, in the conduct of any trade or commerce are hereby de-

clared unlawful whether any person has in fact been misled, deceived or damaged thereby. \*\*\*"

■■ ■ Persons harmed by a violation of this statute have a private right of action for damages, or any other relief deemed proper by the court. (Ill. Rev. Stat. 1981, ch. 121½, par. 270a.) In reviewing such private rights of action, we are guided by the terms of section 11a of the statute (Ill. Rev. Stat. 1981, ch. 121½, par. 271a), which expressly provides, "This Act shall be liberally construed to effect the purposes thereof." As this court has previously ruled, "we perceive a clear mandate from the Illinois legislature that the courts of this State are to utilize the Consumer Fraud Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers." *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 257, 361 N.E.2d 1370, 1374.

Defendant Orkin contends that its conduct was not of "the character and magnitude" proscribed by the Act. We disagree. The evidence showed that the LeMays purchased the home in question in 1973. Shortly after moving in, the LeMays discovered an infestation of termites. Defendant Orkin was called to inspect the home and perform termite treatments. The LeMays also entered into a contract with Orkin, under which Orkin agreed to reinspect and re-treat the home as necessary and to pay up to $100,000 for any subsequent termite damage. Termite problems nevertheless persisted. Orkin re-treated the home in 1975 and again in 1979. Orkin admits that these re-treatments would not have been made unless the house had termites. The LeMays, however, were apparently never told about the continued infestation.

The LeMays placed their home on the market in 1980, after Mr. LeMay was notified he was being transferred by his employer to another State. The LeMays listed the home with defendant Century 21. Doris Hock of Century 21 was the listing agent. During this same period, plaintiffs, the Warrens, had begun to look for what was to be their first home. The Warrens were represented by Millie Sedgwick, a real estate agent associated with Bud Sullivan Realty. The Warrens first viewed the LeMays home in January of 1981. They liked the home and submitted an offer for it, but indicated that they had to obtain VA financing. Although the Warrens' initial offer was refused, the LeMays accepted a subsequent offer from them, and on February 21, 1981, the Warrens and the LeMays signed a sales agreement specifying a purchase price of $41,000.

At about the same time the sales agreement was signed, Mrs. Le-

May observed termite activity in the house. Specifically, she noticed termites surface through a "pinhole" in a board covering the main support beam for the upper story of the house. The termites surfaced in an area over the kitchen. Upon observing this activity, Mrs. LeMay telephoned Doris Hock of defendant Century 21 to advise her that the house had termites. LeMay also reported the termite activity to defendant Orkin, and on three occasions in February 1981, Orkin treated the premises by drilling and applying chemicals. The last such treatment was made by defendant Orkin on February 26, 1981.

As previously noted, the VA financing sought by plaintiffs for the home required a termite inspection report to be paid for by the sellers. On the suggestion of Doris Hock, the real estate agent for the LeMays, the Warrens agreed to have this report prepared by defendant Orkin. On February 27, 1981, a representative for Orkin returned to the home to conduct the necessary inspection. This was the fourth visit to the home by an Orkin representative that month.

Testimony by Elmer Garee, district manager for defendant Orkin during the period at issue, established that Orkin was familiar with VA termite inspection reports and had company policies governing their preparation. The Orkin representative who actually conducted the inspection prepared a two-page report. Page one of the report consisted of a VA form. On that form the inspector indicated that the house had been treated in 1973 and was re-treated on February 26, 1981. Under this notation he wrote "Guarantee #0574388 LR." No mention was made of the two additional re-treatments performed in February of 1981, or of those done in 1975 and 1979. The inspector also checked the box on the form stating, "No visible evidence of infestation from wood destroying insects was observed," ignoring the "pinhole" reported by Mrs. LeMay.

Page two of Orkin's report consisted of a form used by Orkin in its daily operations. This form was not required by the VA. On it, the Orkin inspector drew an outline of the house and wrote the letter T, which he circled, at two points on that outline. The key on the base of the form explained only that T meant "Termite Activity." No further definition of that term is given.

After completing his report, the Orkin representative gave both pages of it to Mrs. LeMay. LeMay gave it to Doris Hock who, in turn, forwarded it to the office of Century 21. The Warrens were never shown page two of the report. The Town & Country Mortgage Company, which handled financing for the Warrens, received only page one of the report and had no record of page two in its files. The VA, which guaranteed the Warren's mortgage, likewise received only page

one.

There is no dispute that the Warrens, Town & Country Mortgage Company and the VA each believed, relying on page one of Orkin's report, that the house was free of termite activity or damage. On the basis of this mistaken belief, the Warren's loan was approved, and they closed on the sale of the house in April of 1981. In July or August of the following year, however, the Warrens discovered that their home was, in fact, infested with termites. Subsequent investigation revealed extensive damage to load bearing beams in their home, and the Warrens were advised by a contractor that they should vacate the premises, which they did. Expert testimony at trial established that this damage had begun well before the Warrens closed the sale in 1981. A contractor called by plaintiffs stated that the house was now beyond repair. Although another contractor, called by defendants, indicated that repair was possible, that contractor estimated repair costs to be approximately $26,000 and admitted on cross-examination that the expense might be greater.

■ Based upon the foregoing evidence, we hold that plaintiffs have established a claim against defendant Orkin for violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262). All re-treatments of the home performed by Orkin and any termite activity or damage its inspector observed were "material facts" which should have been included in the report it was responsible for preparing. Orkin's failure to disclose on page one of the VA form the re-treatments it performed in 1975 and 1979, two of the three re-treatments it made in February of 1981, around the time of the sale, or the visible evidence of termite activity and damage then present constituted the "misrepresentation or the concealment, suppression or omission" of these material facts. Orkin obviously intended for plaintiffs and the VA to rely on its misrepresentation, concealment, suppression or omission of these material facts. In addition, the misrepresentation, concealment, suppression or omission of these material facts was made by Orkin in the conduct of "trade and commerce." As defined by section 1(f) of the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261(f)), the terms "trade" and "commerce" include the "distribution of any services *** or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State."

■ Defendant Orkin raises several arguments in an attempt to refute this analysis. First, it claims that the trial court erred in permitting plaintiffs to amend their complaint after the close of evidence to include allegations regarding defendant Orkin's failure to disclose

all but one of the multiple re-treatments for termites performed on the home. This claim is without merit. Prior to the challenged amendment, plaintiffs' complaint alleged only that defendant Orkin had violated the statute by misrepresenting that the home was free of termite activity and damage, but this allegation would have been sufficient in itself to support plaintiffs' claim against Orkin. The amendment was therefore not determinative of the outcome. Moreover, while the additional allegations were formally made after the close of the evidence, the question of multiple re-treatments was clearly raised and argued in the course of the litigation, and the amendment was made before the case was sent to the jury. Section 2—616(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(a)) authorizes amendments of this kind at any time before final judgment "on just and reasonable terms." To be sure, this was the sixth amendment made by plaintiffs, and we believe as a general matter that repeated and piecemeal changes in the pleadings should be avoided whenever possible. Nevertheless, amendments to conform the complaint to the evidence should be granted liberally, and any doubt should be resolved in favor of the amendment. (*Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 845, 396 N.E.2d 617, 625.) Because we do not see, and defendant Orkin never adequately explains, how the amendment challenged here resulted in any prejudice to its case, we conclude that the trial court was clearly within its discretion in permitting the amendment to be made.

■ Defendant Orkin next contends that it cannot be held liable under the statute because it did not intend to deceive plaintiffs. This, however, is no defense. Under the statute, state of mind is immaterial, and a defendant need not be motivated by an intent to deceive. (Peterson, *Tort Claims By Real Estate Purchasers Against Sellers & Brokers,* 1983 S.I.U.L.J. 161, 178.) As Justice Carter of this court wrote eight years ago, a violator's good or bad faith is not important. (*American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 259, 361 N.E.2d 1370, 1374-75.) Even innocent misrepresentations may be actionable. (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267, 1277.) By its own terms, the statute requires only that a violator intend for a purchaser to *rely* on his acts or omissions. A party is considered to intend the necessary consequences of his own acts or conduct. (*Posner v. Davis* (1979), 76 Ill. App. 3d 638, 643, 395 N.E.2d 133, 137.) Because the sole purpose for the requested report in this case was to assist plaintiffs in securing VA financing, the very fact that defendant Orkin submitted that report evinces the requisite intent.

A third argument raised by defendant Orkin is that liability cannot be imposed under the statute for a single transaction. To support its position, defendant Orkin cites *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 474 N.E.2d 711. There, however, the fourth district merely held that an admittedly erroneous termite inspection report did not violate the Consumer Fraud and Deceptive Business Practices Act because: (1) the plaintiff home purchasers had themselves hired the termite inspection company and could therefore proceed against it directly for simple breach of contract; (2) the termite inspection company was only "tangentially involved" in the purchase of the home; and (3) one of the misrepresentations in the report, that the inspection company was bonded, was unrelated to the damage sustained by the plaintiffs when the home they bought, thought to be termite free, proved to have serious structural damage from termite infestation.

The facts in this case are clearly distinguishable. Here, defendant Orkin was retained by defendants the LeMays, not by plaintiffs, because of the VA requirement that the termite inspection be paid for by the sellers. Privity is absent. Plaintiffs therefore could not sue defendant Orkin for simple breach of contract, and the Consumer Fraud and Deceptive Business Practices Act was not merely "an additional and redundant remedy." (*Grass v. Homann* (1984), 130 Ill. App. 3d 874, 880, 474 N.E.2d 711, 715.) The report prepared by defendant Orkin was central, not "tangential" to plaintiffs' purchase of the home. The report was a prerequisite for VA financing. The record shows unambiguously that had the true extent of termite problems been disclosed in Orkin's report, financing would not have been approved, and plaintiffs would not have bought the house. Moreover, Orkin itself stood to benefit from its misrepresentation, concealment, suppression or omission. An accurate report may have triggered Orkin's liability under its $100,000 guarantee. What happened instead was that plaintiff Terry Warren believed that the single February 1981 re-treatment noted on the report was simply a preventative measure and, in the light of the Orkin guarantee plainly mentioned on the face of the report, assumed that there were no termite problems with the house. In reliance on the report, which we find was reasonable, plaintiffs therefore decided not to continue Orkin's contract after the purchase. The contract lapsed. Defendant Orkin escaped liability under the guarantee. Finally, the misrepresentation, concealment, suppression or omission by Orkin here related exclusively to termite activity and, accordingly, was directly related to plaintiffs' loss.

▪ Aside from the factual distinctions between this case and *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 474 N.E.2d 711, we

believe that *Grass* represents a minority position. The weight of authority has found a single transaction sufficient to establish a claim under the Consumer Fraud and Deceptive Business Practices Act. (See, *e.g., Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887, 453 N.E.2d 1129; *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267; *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448; *Grimes v. Adlesperger* (1978), 67 Ill. App. 3d 582, 384 N.E.2d 537; Peterson, *Tort Claims By Real Estate Purchasers Against Sellers & Brokers,* 1983 S.I.U.L.J. 161, 180.) We believe that the majority view is consistent with both the language and the broad remedial purposes of this statute as expressed by the legislature, and therefore adopt it here.

Orkin's final argument with respect to liability under this statute is that any misrepresentation, concealment, suppression or omission of material facts in page one of its inspection report was not a proximate cause of plaintiffs' damage, because page two of the report did indicate "termite activity" and would have properly alerted plaintiffs, the mortgage company and the VA to problems with the home prior to consummation of the sale. Although defendant Orkin concedes that none of the parties actually saw page two before the sale, it argues that removal of page two was perpetrated by someone else and that the act of removing the page constituted an intervening cause which severed the causal chain. On careful scrutiny, this argument must fail.

As a preliminary matter we observed that page two of the report not only fails to clarify the condition of the house, it actually creates ambiguity and uncertainty. When the notations of "Termite Activity" on page two are juxtaposed to the representation on page one that "No visible evidence of infestation from wood destroying insects was observed," one can only guess at the report's true meaning. For example, because "Termite Activity" is not defined, one might reasonably interpret the notations on page two as referring not to present activity, but to the activity which was the subject of the 1973 treatment disclosed on page one. Alternatively, one might conclude that termite "activity" denotes something distinct from, and less serious than, "infestation."

■ Section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262) incorporates by reference the proscriptions of section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 312). Subsection 12 of the latter provision makes unlawful "any other conduct which similarly creates a likelihood of confusion or misunderstanding." (Ill. Rev. Stat. 1981, ch. 121½, par. 312(12).) In light of the

problems just discussed, defendant Orkin's submission of page two falls squarely within this prohibition and thus itself constitutes a violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act. (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) Page two further violates the statute because, as with page one, it omits the material fact of the damage reported by defendants the LeMays, which triggered the multiple re-treatments performed by defendant Orkin in February, 1981. The description key on the second page indicates that the presence of any damage is to be designated by the letter X. No X's appear on the diagram.

■ While statutory violations are present on page two as well as page one, these violations do not, in themselves, create damage liability. Section 10a(a) of the statute (Ill. Rev. Stat. 1983, ch. 121½, par. 270a(a)) provides a private right of action to any person who suffers damage "as a result of" a violation. We construe this provision to mean that a violator may be liable for damages only where injury is sustained by the plaintiff and that injury has a direct and proximate connection to the violation in question. Only the second prong of this requirement, proximate cause, has been placed in issue by defendant Orkin.

Despite the confusion and misunderstanding created by, and the omission of a material fact from, page two of defendant Orkin's report, plaintiff Terry Warren did testify on cross-examination that if he had seen page two prior to closing, he would not have proceeded with the purchase until he ascertained the meaning of the "Termite Activity" notations. This admission appears to preclude the possibility that plaintiffs' damages were caused by the statutory violations on that page. It does not necessarily follow, however, that the mere existence of the second page insulates defendant Orkin from liability for the other and more blatant violations on page one. This is so even though defendant Orkin asserts, and the record reflects, that someone other than Orkin was responsible for failure to disclose page two to plaintiffs, the mortgage company, or the VA.

■ As defendant Orkin itself recognizes, page two provides a defense, if at all, only in the event that nondisclosure of that page is held to be an intervening and efficient cause which breaks the causal connection between the wrong it committed on page one and the injury sustained by plaintiffs. Our supreme court has held, however, that " 'The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was, itself, probable or foreseeable. [Citations.]' " (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79, 117 N.E.2d 74.) This rule applies

even where, as here, the allegedly independent intervening force also constitutes an illegal act. If the illegal act, nondisclosure of page two, might reasonably have been foreseen when defendant Orkin violated the statute with page one, then the causal chain is not broken by the intervention of such act. See *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 80, 117 N.E.2d 74.

 █ In assessing proximate cause where an intervening force is alleged to be present, the only question of concern is "whether or not this intervening force is without or within the range of reasonable anticipation and probability." (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 82, 117 N.E.2d 74.) Each case must turn on its own facts. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 395, 356 N.E.2d 93, 100.) A defendant may escape liability by demonstrating that the intervening event was unforeseeable as a matter of law, but proximate cause is ordinarily a question for the jury. (64 Ill. 2d 380, 395, 356 N.E.2d 93, 100.) A jury's finding of proximate cause will not be disturbed on review unless it is against the manifest weight of the evidence. (See 64 Ill. 2d 380, 396, 356 N.E.2d 93, 100.) A verdict is against the manifest weight of the evidence only if it is palpably erroneous and wholly unwarranted. *Frankenthal v. Grand Truck Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415, 458 N.E.2d 530, 536.

The evidence in this case showed that page one of defendant Orkin's report, the VA form, appeared to be complete in itself. No reference was made to any attachments. For example, it does not indicate that it is "page 1 of 2." Moreover, where additional information is requested beyond that for which space is provided, the instructions ask that such information be set forth on the reverse side of the form, as opposed to in attachments. The form was an official VA document, was submitted solely to comply with VA requirements, and was the only form required by the VA. By contrast, page two was, as previously noted, nothing more than a document used by Orkin in its own operations. Apparently it is precisely the same document normally used by Orkin in making inspections and estimates for Orkin service to potential and existing customers. The document was not requested nor required by the VA in making financing decisions. The chief appraiser for the Chicago VA office testified that attachments were rare and that he had never personally seen one on a report from this part of the State.

Significantly, page one of the report, the official VA form, was completed in such a way as to promote VA approval of plaintiffs' mortgage. Page two on the other hand would have delayed, if not defeated, the sale. At the time the report was prepared, defendants the

LeMays had already purchased another home and needed the money from this sale to help pay for it. Although defendant Orkin may not have been fully aware of this, it knew or should have known at least that defendants the LeMays had an interest in seeing that the sale was not thwarted by termite problems. Defendant Orkin's usual practice was to check inspection reports against the customer's file before submitting them. Here, however, the report was completed on site and handed over directly to defendants the LeMays. No record of the report was even retained in defendant Orkin's files.

In sum, defendant Orkin placed the only documentary evidence of termite problems in the hands of persons with an obvious and substantial interest in nondisclosure, the sellers, while at the same time preparing its report in such a manner that such nondisclosure could be readily accomplished without risk of detection by the purchasers, the mortgage company, or the VA itself prior to sale. Under these circumstances, no serious argument can be made that nondisclosure of page two was unforeseeable as a matter of law, and the jury could certainly conclude that removal of that page was within the range of reasonable anticipation and probability.

In the end, the inescapable reality of the situation is that financing would not have been approved and plaintiffs would not have closed the sale if defendant Orkin had simply made a full and accurate disclosure of the home's true condition on page one of its report. Its failure to make this disclosure constitutes a violation of section 2 of the Consumer Fraud and Deceptive Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262), for reasons previously stated, and the jury's belief that page two, which itself violated the statute, provided no defense can scarcely be characterized as palpably erroneous and wholly unwarranted. Accordingly, the jury's finding that the statutory violations by defendant on page one were a proximate cause of plaintiffs' damages was not against the manifest weight of the evidence. That finding shall not be disturbed by this court.

Defendant Century 21, for its part, first contends that it cannot be held liable under section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262) on the grounds that the statute does not apply to actions of real estate brokers selling real property within the State of Illinois. The cases do not so hold. (See e.g., Buzzard v. Bolger (1983), 117 Ill. App. 3d 887, 453 N.E.2d 1129; Duhl v. Nash Realty, Inc. (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267; Beard v. Gress (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448.) Defendant Century 21 argues that these decisions are contrary to the intent of the legislature, but we find otherwise.

■ Where a statute has been judicially construed and that construction has not evoked an amendment, the presumption is that the legislature has acquiesced in the court's exposition of legislative intent. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 172, 347 N.E.2d 705, 709.) Defendant Century 21 correctly observes that the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*) was amended subsequent to *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448, and *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267. In amending the statute, however, the legislature did not remove in-State real estate transactions from the statute's reach. It merely redefined the elements necessary to hold real estate brokers or salesmen liable (see Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4)) and added that "This provision shall be effective as to any communication, whenever occurring." (Pub. Act 84—894, sec. 10b(4), eff. Sept. 23, 1985, 1985 Ill. Laws 5724.) We construe these limited amendments to constitute acquiescence in the prior judicial holdings that in-State real estate sales were and are intended to be covered by the statute. As discussed in connection with defendant Orkin, and in view of the legislature's limited amendments, we further find that even a single act or transaction is sufficient to trigger the statute's prohibitions.

■ Defendant Century 21 next asserts that the trial court erred in instructing the jury regarding the elements of plaintiffs' claims and applicable burden of proof and in denying its post-trial motion. From defendant Century 21's brief, however, it is apparent that the gravamen of its argument is actually that the facts proved at trial were insufficient to subject defendant Century 21 to liability under any of the theories alleged. We cannot agree. As in the case of defendant Orkin, the jury found that defendant Century 21 violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262). No basis exists for disturbing that finding.

Although many of the facts pertinent to defendant Century 21's liability under the statute have already been set forth, we mention them again briefly. Defendants the LeMays listed the home in question with defendant Century 21. Doris Hock, who worked for defendant Century 21, was the listing agent. When defendant Karen LeMay discovered the termite activity in February of 1981, she promptly telephoned Doris Hock and advised her that the house had termites. The VA required the sellers (the LeMays) to pay for a termite report, and defendant Orkin was selected to prepare the report on Doris Hock's suggestion. After defendant Orkin completed its report, defendant Mrs. LeMay gave the report directly to Doris Hock, who in turn for-

warded it to defendant Century 21's office. Doris Hock testified that it was defendant Century 21's responsibility to send a copy of the report to the real estate agent representing plaintiffs. This was not done. Dale Sachtleben, office manager for defendant Century 21 at the time of the sale, testified that once the report was received from the seller, defendant Century 21 was obligated to send it to the mortgage company that was going to be making the loan and reviewing it for submission to the VA for formal approval. In fact, the mortgage company and the VA received only page one of the report, which revealed no termite activity or damage. The original of the second page remained in defendant Century 21's files. At closing plaintiffs were shown only page one. Page two was never disclosed to plaintiffs, their agent, the mortgage company or the VA prior to the sale, and none of these parties was otherwise informed by defendant Century 21 of any termite problems with the house. Financing would not have been approved, and the sale would not have been consummated had this disclosure been made. Without a sale, defendant Century 21 would have received no payment for the services it performed on behalf of defendants the LeMays.

▮▮ Under the foregoing circumstances, we find ample support for the jury's finding that defendant Century 21 violated section 2 of the statute (Ill. Rev. Stat. 1981, ch. 121½, par. 262). Defendant Century 21 clearly concealed, suppressed or omitted the material fact of termite activity by failing to disclose page two of defendant Orkin's report. Defendant Century 21 protests that there is no direct evidence that it actually intended for plaintiffs, the mortgage company or the VA to rely on this concealment, suppression or omission, but such direct evidence is not required. Intent may be shown by circumstantial evidence. (*Vitale v. Illinois Department of Revenue* (1983), 118 Ill. App. 3d 210, 213, 454 N.E.2d 799, 802.) Circumstantial evidence has been defined as "the proof of certain facts and circumstances from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." (*Pace v. McClow* (1983), 119 Ill. App. 3d 419, 423-24, 458 N.E.2d 4, 8.) Given that defendant Century 21 knew the purpose of the termite report; understood that the report would be relied upon by plaintiffs, the mortgage company and the VA in proceeding with the financing and sale; was responsible for transmitting the report to plaintiffs' real estate agent and the mortgage company; stood to lose its commission if the sale was not consummated; and failed to divulge the second page of the report to plaintiffs even at closing, there is no doubt that the jury could reasonably have inferred that defendant Century 21 in-

tended for its concealment, suppression or omission to be relied upon.

■■■ Defendant Century 21 similarly protests that there was no proof to show that it intended to mislead plaintiffs. As previously discussed, however, the statute requires only that a violator intend for others to *rely* on its concealment, suppression or omission. Intent to deceive is not necessary. Although the "state of mind" required to establish a statutory violation has now been altered by an amendment to section 10b of the statute with respect to the sale of real estate located in Illinois by real estate brokers or salesmen (Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4)), that amendment did not take effect until 1982, after plaintiffs' claim accrued, and is therefore inapplicable to this case. See *Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887, 893, 453 N.E.2d 1129, 1132.

■■■ Defendant Century 21 next argues that it cannot be held liable for the damages sustained by plaintiffs because there is no evidence that it ever possessed or forwarded the copies of defendant Orkin's report relied upon by plaintiffs, the mortgage company or the VA in processing the mortgage and closing the sale. This claim is without merit. To reiterate, testimony clearly showed that the report was relayed by defendants the LeMays to Doris Hock, who in turn forwarded it to defendant Century 21's office, and that it was defendant Century 21's responsibility to provide the report to the mortgage company for use in obtaining the loan and securing VA approval. There is no question that defendant Century 21's files contained only a copy of page one of defendant Orkin's report, but the original of page two. There is also no dispute that what the mortgage company saw, what the VA received and what plaintiffs signed at closing was the original of page one. From this evidence the jury could reasonably have concluded that defendant Century 21 did in fact receive both pages of the report, but that rather than forwarding them both as should have been done, it instead retained the second page, kept a copy of page one, then forwarded only the original of page one to the mortgage company for use in making the loan and obtaining the VA guarantee.

Defendant Century 21 attempts to refute this conclusion by pointing out that an item on page one regarding accessibility of the home for inspection was not completed on the copy, but was marked with an X on the original. That the original bears a single notation absent from the copy does not, however, establish that defendant Century 21 never in fact possessed the original, or that the original was supplied to the mortgage company, the VA and plaintiffs from some other source. To the contrary, in view of the other evidence adduced, includ-

ing testimony by representatives from the mortgage company, the jury could reasonably have inferred simply that the notation was absent from page one when defendant Century 21 received it and was subsequently added at defendant Century 21's office after defendant Century 21 separated the copy, a carbon, from the original, before forwarding the original to the mortgage company. Again the evidence may be circumstantial, but it is nevertheless sufficient to support the jury's finding that defendant Century 21's concealment, suppression or omission was a proximate cause of plaintiffs' damages.

Defendant Century 21 next takes issue with the following instruction, tendered by plaintiffs and given by the court:

"Dale Sachtleben and Doris Hock were the agents of the defendant, Century 21-Baebler Realtors, at or before the time of this occurrence. Therefore, any act or omission of the agent at that time was in law the act or omission of the defendant, Century 21-Baebler Realtors."

This instruction was patterned after Illinois Pattern Jury Instruction (IPI), Civil, No. 50.02 (2d ed. 1971). Defendant Century 21 objected and objects to the instruction as it pertains to Doris Hock on the grounds that the evidence was insufficient to establish that she was defendant Century 21's agent. We disagree.

As a threshold matter, we observe that while the instruction speaks in terms of agency, the more accurate question is whether Doris Hock was defendant Century 21's servant. For the purpose of imposing liability on defendant Century 21, however, this distinction is largely semantic. Although the words "agent" and "servant" are not wholly synonymous, there is general agreement that no basic or fundamental distinction is to be drawn between the liability of a principle for the tort of an agent and the liability of a master for the tort of a servant. *Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 275, 285 N.E.2d 619, 626.

The relationship of master and servant is not one capable of exact definition and cannot be defined in general terms with substantial accuracy. (*Ryan v. Associates Investment Co.* (1938), 297 Ill. App. 544, 550, 18 N.E.2d 47.) Whether one acting for another is a "servant" must be determined by consideration of all the facts of a particular case. (*Pemberton v. Tieman* (1983), 117 Ill. App. 3d 502, 506, 453 N.E.2d 802, 805.) Pertinent factors include the extent of control by the employer over the details of the work; whether the person employed is engaged in a distinct occupation or business; the type of occupation and whether it is usually done under direction of an employer or by a specialist without supervision; the skill required for the

job; whether the employer or the person employed provides the tools, instrumentalities and place of work; method of payment; whether or not the work is part of the employer's regular business; and whether or not the parties believe that they are creating a relationship of master and servant. *Ryan v. Associates Investment Co.* (1938), 297 Ill. App. 544, 550, 18 N.E.2d 47.

In this case Doris Hock testified that she was a licensed real estate salesperson. As such she could only work in the employ of a real estate broker. Doris Hock stated that she "worked for" defendant Century 21 as a listing agent. Her job was to make contact with people selling their homes and get them to list their properties with defendant Century 21. She was trained for this job by defendant Century 21. The work she did was part of defendant Century 21's regular business, did not constitute a distinct occupation, and contributed no additional specialized services not possessed by defendant Century 21. Hock worked out of defendant Century 21's office. After obtaining a listing from a seller, she would forward the listing information to the office, which would place necessary advertisements. Thereafter, her responsibilities apparently consisted of maintaining contact with the seller for defendant Century 21, transmitting documents between defendant Century 21's office and the seller, and carrying contracts to the respective parties in the event of sale.

Defendant Century 21 points out that Hock was not paid a salary, but instead received 25% of the gross commission it received from any sale where she had acted as listing agent. It urges that this is consistent with a determination that Hock was an independent contractor, not a servant, in that "an independent contractor is ordinarily paid by the job." In support of this proposition defendant Century 21 cites *Ryan v. Associates Investment Co.* (1938), 297 Ill. App. 544, 18 N.E.2d 47. In that case, however, the court further noted that "[t]he method of payment is not without significance, but it is by no means the test." (297 Ill. App. 544, 554, 18 N.E.2d 47.) Viewing all of the other circumstances of Hock's relationship with defendant Century 21, we believe that a clear inference arises that she was in fact defendant Century 21's servant. This inference is buttressed by reference to sections 4.03 and 4.07 of the Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1981, ch. 111, pars. 5707, 5711), in effect at the time of the events giving rise to the action. Under those provisions, a salesperson such as Hock could be associated with a broker such as Paul Baebler of defendant Century 21 as an independent contractor and not a servant, but only by an agreement clearly establishing and stating such a relationship. Defendant Century 21

could have attempted to rebut the inference that Hock was its servant by producing evidence of such an agreement. It did not. Nor did it adduce any other conflicting evidence. Accordingly, we hold on the facts of this case that the trial court correctly treated the matter as a question of law and properly construed the relationship between defendant Century 21 and Hock as that of master and servant. See *Ryan v. Associates Investment Co.* (1938), 297 Ill. App. 544, 556, 18 N.E.2d 47.

▉▉ Defendant Century 21 raises two additional arguments regarding the challenged instruction. First, it asserts prejudice on the grounds that Sachtleben knew nothing of the transaction and did not handle any portion of it. We agree that instructing the jury on issues upon which no evidence has been produced constitutes reversible error. (*Connolly v. Melroy* (1978), 63 Ill. App. 3d 850, 855, 380 N.E.2d 863, 867.) Here, however, the evidence showed that Sachtleben was defendant Century 21's agent, *i.e.*, servant, by virtue of his employment as its office manager. Sachtleben held this position during the period at issue here. His responsibilities included residential real estate. He testified that it was the responsibility of his office to forward defendant Orkin's report to plaintiffs' mortgage company for use in making plaintiffs' loan and securing VA approval for it. Sachtleben did not deny knowledge of, or responsibility for, this transaction, although he had ample opportunity to do so. Under these circumstances, a jury question existed with regard to whether Sachtleben himself was responsible for the concealment, suppression or omission of page two of defendant Orkin's report. If he was, this act or omission would be sufficient to impose liability on defendant Century 21 under traditional *respondeat superior* analysis, which holds that an employer is liable for an employee's torts committed within the scope of his employment. (*Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493, 422 N.E.2d 925, 930.) The challenged instruction did no more than express this principle to the jury and, in view of the facts presented, was entirely proper.

▉▉ Defendant Century 21's second remaining objection to the instruction is that it fails to adequately set forth the heightened requirements necessary to impose punitive damages against a master or other principal for an act or omission by its agent. This particular objection, however, was not raised by defendant Century 21 at trial or in its post-trial motion. Accordingly, we deem the objection waived, and it cannot be urged as error on appeal. *Chiesa v. Laspisa* (1980), 90 Ill. App. 3d 911, 917, 414 N.E.2d 47, 52.

In addition to objecting to instructions given by the court, defendant Century 21 also complains of the court's refusal to submit two

special interrogatories. These special interrogatories read as follows:

"Do you find that Plaintiffs would have received a loan from Town and Country Mortgage Company if page one of the termite report was available without Block 6 being checked?"

"Do you find that more than one copy of the termite report existed?"

 █ Special interrogatories are used for the purpose of testing a general verdict against the jury's conclusion concerning the ultimate controlling facts. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1980), 82 Ill. App. 3d 727, 735, 403 N.E.2d 108, 114.) When a special interrogatory is in proper form, the trial court has no discretion but to submit it to the jury. (82 Ill. App. 3d 727, 735, 403 N.E.2d 108, 114.) To be in proper form, however, a special interrogatory must relate to one of the ultimate facts upon which the rights of the parties depend and must be such that an answer responsive thereto must be inconsistent with some general verdict that might be returned. *Stach v. Sears, Roebuck & Co.* (1981), 102 Ill. App. 3d 397, 411, 429 N.E.2d 1242, 1252.

 Neither of defendant Century 21's tendered special interrogatories satisfies this standard. The first interrogatory relates to the fact, previously discussed, that an item on page one of defendant Orkin's report regarding the accessibility of the home for inspection (referred to here as Block 6) was not completed on the copy contained in defendant Century 21's files, but was marked with an X on the original. The problem with this interrogatory is that it speaks in terms of "availability" of the incomplete copy. "Availability" is not the issue. The incomplete copy was of course "available" in the sense that it was present in defendant Century 21's files. For the purpose of establishing defendant Century 21's liability for damages under section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981 ch. 121½, par. 262), the pertinent inquiry is whether the version of the termite report *actually* used by the mortgage company in approving plaintiffs' loan and securing VA approval was tainted by the concealment, suppression, omission or misrepresentation of material facts for which defendant Century 21 was liable. Accordingly, even a negative response to this interrogatory would not necessarily have been inconsistent with the jury's general verdict against defendant Century 21 on plaintiffs' statutory claim.

 As for the second interrogatory, the question of whether more than one termite report exists is material only to the extent that it seeks a finding which might render more or less probable the ultimate fact that defendant Century 21 was responsible for conceal-

ment, suppression, omission or misrepresentation in connection with its handling of the report which resulted in damage to plaintiffs. As such, it pertains merely to an evidentiary matter. Special interrogatories which ask for a finding as to mere evidentiary facts are never proper. (*Le Flore v. Chicago Transit Authority* (1973), 12 Ill. App. 3d 71, 74-75, 297 N.E.2d 758, 760.) Even if the interrogatory were not objectionable on this basis, however, the court's failure to allow it would nevertheless not constitute error. Section 2—1108 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1108) requires special interrogatories only on material *questions* of fact. As defendant Century 21 itself admits, there was absolutely uncontroverted evidence that two copies of page one of the termite report did exist. This fact was therefore not in "question" and need not have been specially submitted to the jury.

■■■ Defendant Century 21 next argues that it cannot be held liable for actual damages because plaintiffs' claim was for purely economic loss, which is not compensable under the theories alleged. In support of this proposition, defendant Century 21 cites *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, but that case is inapposite. *Moorman* dealt with damages compensable under common law principles of negligence, misrepresentation and strict liability. Here, by contrast, defendant Century 21 was found liable for violation of a statute which specifically authorizes the award of actual damages "or any other relief which the court deems proper." (Ill. Rev. Stat. 1981, ch. 121½, par. 270a(a).) In view of this express statutory authorization, the availability of a remedy for actual damages to plaintiffs is beyond doubt. Whether *Moorman* would apply to any of the other theories of recovery advanced by plaintiffs need not be reached.

■■■ ■ No issue is taken with the actual amount of damages awarded to plaintiffs by the jury. Both defendant Orkin and defendant Century 21 assert, however, that their conduct was not of such a character as to justify submitting to the jury plaintiffs' claims for punitive damages. We disagree. Punitive damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when a defendant acts wilfully or with such gross negligence as to indicate a wanton disregard of the rights of others. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.) The preliminary question of whether the facts alleged support a claim for punitive damages is properly one of law. (*Morrow v. L. A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1096, 468 N.E.2d 414, 420.) If a plaintiff's factual allegations are sufficient to state a

legally cognizable claim for punitive damages, submission of the issue of punitive damages to the jury then rests within the trial court's discretion, and the court's determination will not be disturbed absent an abuse of that discretion. *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 937, 419 N.E.2d 578, 596.

In this case, defendants do not dispute that punitive damages may be recovered for violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262) where attendant circumstances of aggravation, as set forth in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359, are present. Plaintiffs alleged facts here to show that defendants' violation of the statute was done with "actual or deliberate intention to harm" or if not intentional, with "an utter indifference to or conscious disregard for the property of another," *i.e.*, that it was wilful and wanton. The parties do not contest, and we hereby find, that these allegations are sufficient to state a cognizable claim for punitive damages arising from defendants statutory violation.

We further find that the court did not abuse its discretion in submitting plaintiffs' punitive damages claim to the jury. In determining entitlement to punitive damages, each case must be considered in its own context. (*Gent v. Collinsville Volkswagen, Inc.* (1983), 116 Ill. App. 3d 496, 505, 451 N.E.2d 1385, 1391.) There is no need to reiterate the facts stated above to set the context here. The record contains ample evidence from which the jury could conclude that defendants Orkin and Century 21, through one or more of their employees, acted in such a manner as to indicate a wilful and wanton disregard for plaintiffs' rights. Whether defendants were in fact guilty of wilful and wanton misconduct so as to warrant imposition of punitive damages was therefore properly left by the trial court for the jury's resolution. (See *Smith v. Seiber* (1984), 127 Ill. App. 3d 950, 957, 469 N.E.2d 231, 236.) The jury resolved this issue in favor of plaintiffs. We cannot say that its factual determination was contrary to the manifest weight of the evidence.

Defendant Century 21 contends, in the alternative, that the amount of punitive damages assessed against it should be reduced. Again, we cannot agree. When, as here, punitive damages may be assessed, they are allowed in the nature of a punishment and example to deter the wrongdoer and others from committing like offenses in the future. (*Gent v. Collinsville Volkswagen, Inc.* (1983), 116 Ill. App. 3d 496, 505, 451 N.E.2d 1385, 1391.) Because of the penal nature of such damages, the law disfavors them and requires courts to exercise

caution that they not impose punitive damages improperly or unwisely. (116 Ill. App. 3d 496, 505, 451 N.E.2d 1385, 1391.) Nevertheless, the amount of any punitive damage award is a matter for the sound discretion of the trier of fact. (*Smith v. Seiber* (1984), 127 Ill. App. 3d 950, 957, 469 N.E.2d 231, 236.) A reviewing court will reduce the amount of such an award only when it is clearly excessive. 127 Ill. App. 3d 950, 957, 469 N.E.2d 231, 236.

■■■ The only argument of substance advanced by defendant Century 21 regarding the size of the punitive damage award is that defendant Century 21 cannot afford to pay it and should have been permitted to adduce evidence of its impecunious circumstances at trial. For more than a hundred years, however, the courts of this State have held that a defendant may not introduce evidence regarding its financial resources as an independent defense to a claim for punitive damages. (*Mullin v. Spagenberg* (1884), 112 Ill. 140, 146; *Wilston v. Colston* (1983), 120 Ill. App. 3d 150, 152, 457 N.E.2d 1042, 1044.) Such evidence is admissible only by way of rebuttal where a plaintiff has first offered evidence of a defendant's wealth for the purpose of enhancing a punitive damage award. (120 Ill. App. 3d 150, 153, 457 N.E.2d 1042, 1044.) Here, plaintiffs offered no such evidence, nor were they required to. (120 Ill. App. 3d 150, 153, 457 N.E.2d 1042, 1044.) Accordingly, the trial court did not err in refusing to permit defendant Century 21 to plead its poverty.

■■■ Defendant Century 21 engaged in an illegal and deceptive business practice for monetary gain. The result was that plaintiffs made a substantial investment in a home, their first, which proved to be unsafe for human habitation and which they were forced to abandon. The jury's award of $34,700 in actual damages compensated plaintiffs for the tangible loss they suffered. In view of all the circumstances of the case, however, we believe that the jury's additional award of $25,000 in punitive damages was fair punishment for defendant Century 21's conduct and will serve as an appropriate deterrent against similar conduct by defendant Century 21 and others in the future. We note, in this regard, that had plaintiffs' claim been prosecuted by the attorney general, defendant Century 21 would have been subject to a civil penalty of up to $50,000 in addition to any other relief ordered by the court. (Ill. Rev. Stat. 1981, ch. 121½, par. 267.) While this is not dispositive, we find it to be an important *indicium* of the value placed by the people of this State on the rights and obligations at issue herein and of the extent of punishment which can properly be imposed on those, like defendant Century 21, who violate the law. We therefore conclude that the punitive damages assessed

against defendant Century 21 were not clearly excessive.

Defendants Orkin and Century 21 next object to the trial court's award of attorney fees to plaintiffs, citing the common law principle that such fees may not be awarded separately where, as here, punitive damages are also awarded. (See *e.g., Glass v. Burkett* (1978), 64 Ill. App. 3d 676, 381 N.E.2d 821.) That principle is inapplicable to the case at bar. Plaintiffs' entitlement to attorney fees here is based not on common law, but on section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 270a(c)). That provision specifically authorizes an award of reasonable attorney fees and costs to the prevailing party *"in addition to the relief provided in this Section"* (emphasis added). Defendants' contention is therefore meritless.

On their cross-appeal, plaintiffs assert that the amount of attorney fees and costs awarded to them by the trial court was inadequate. They ask this court to reverse the trial court's award and enter judgment for the full amount of fees and costs they requested. This we decline to do. The parties have cited no authority specifically concerning the amount of attorney fees and costs compensable at trial under section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 270a(c)), and we are aware of none. As a general matter, however, our court has previously ruled that the determination as to what constitutes "reasonable" attorney fees rests with the sound discretion of the trial court. (*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 711, 355 N.E.2d 86, 90.) We hold that this standard is an appropriate one for assessing the amount of attorney fees and costs awarded under the statute involved here.

In ruling on plaintiffs' claim for fees and costs, the trial court expressly considered the time and labor required, the novelty and difficulty of the questions involved, the experience and ability of plaintiffs' counsel, the skill necessary to perform the legal services rendered, the customary fees charged for such services, and the benefits resulting to plaintiffs. Plaintiffs claim that the court improperly excluded certain items from its calculations, but we need not address the issue. Even if exclusion of these items was error, we cannot say that the total fees and costs awarded in this case was so inadequate as to amount to a clear abuse of discretion by the court.

Finally plaintiffs move for an award of their reasonable attorney fees and costs on this appeal. Section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 270a(c)) provides that fees and costs may be awarded to a pre-

vailing party by "the Court" in "any action brought by a person under this Section." The question raised by plaintiffs' motion is whether this provision limits awards of fees and costs to work performed before the trial court or may also be interpreted as encompassing fees and costs reasonably incurred by a party in successfully defending an appeal.

Because statutes which permit attorney fees and costs to be assessed are in derogation of common law, courts must normally construe them strictly. (*Gonzales-Blanco v. Clayton* (1983), 120 Ill. App. 3d 848, 850, 458 N.E.2d 1156, 1158.) When construing a particular statute, however, the court may also give the statute's language its plain and ordinary meaning and is required to determine and give effect to the intent of the legislature. (120 Ill. App. 3d 848, 850, 458 N.E.2d 1156, 1158.) As we noted at the outset of this opinion, the legislature here has expressly declared that the provisions of the Consumer Fraud and Deceptive Business Practices Act "shall be liberally construed to effect the purposes thereof." (Ill. Rev. Stat. 1981, ch. 121½, par. 271a.) The language of section 10a(c) of the Act (Ill. Rev. Stat. 1981, ch. 121, par. 270a(c)) does not, by its own terms, restrict fees payable to those incurred at trial. In view of the statute's broad remedial purposes, we perceive that the intent of this provision is to compensate a prevailing party for *all* fees and costs reasonably incurred in connection with the claim brought pursuant to its terms. Where the claim must be litigated not only at trial, but also on appeal, then the attorney fees and costs incurred by the prevailing party in connection with appellate proceedings must be deemed an integral part of that claim and should be recoverable under the statute. See *Department of Public Works & Buildings v. Lanter* (1958), 15 Ill. 2d 33, 40, 153 N.E.2d 552, 556.

Defendants assert that an additional assessment of fees and costs will have the affect of penalizing them for exercising their legitimate rights of appeal. We view the matter differently. Defendants are not being penalized for exercise of any rights, but rather are being made to bear the full and fair consequences of their illegal conduct as found by the jury and affirmed by this court. Allowing plaintiffs to recover their reasonable fees and costs on appeal is wholly consistent with our statutory mandate "to utilize the Consumer Fraud Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and to grant appropriate remedies to defrauded consumers." *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 257, 361 N.E.2d 1370, 1374.

In view of our holding that defendants Orkin and Century 21 have

violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262), we do not reach the question of whether the jury's verdict was proper under the other theories alleged by plaintiffs, nor is it necessary that we address the additional points raised by plaintiffs on their cross-appeal. Although defendants have asserted various arguments not discussed herein regarding their statutory liability, we have carefully reviewed the record and the applicable law and found these arguments to be without merit.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed. The circuit court's order awarding plaintiffs $17,464.50 in attorney fees and $335.42 in costs is likewise affirmed. In addition, plaintiffs' motion for attorney fees and costs on appeal is granted, and the cause is remanded to the trial court for a hearing on the amount of attorney fees and costs reasonably expended by plaintiffs in defending this appeal.

Judgment affirmed; motion granted; cause remanded with directions.

WELCH and KARNS, JJ., concur.